Dallas Herbert GRASTY, Appellant,

v.

Carolyn A. GRASTY, Appellee.

No. 6446.

District of Columbia Court of Appeals.

Argued Nov. 6, 1972.

Decided March 29, 1973.

George H. Windsor, Washington, D. C., for appellant.

John Alexander, Washington, D. C., for appellee.

Before KELLY, KERN and PAIR, Associate Judges.

KERN, Associate Judge:

Appellee-wife sued for and obtained a divorce from appellant on the ground of adultery. He appeals from those parts of the divorce decree entered by the trial court which (1) ordered him to pay monthly alimony and child support in the amount of $555, (2) awarded her sole title to the house held in their joint names, and (3) directed him to reimburse her in the amount of $1,300 for what she herself had paid her attorney (a) as a retainer fee and (b) for the services of a private detective to obtain evidence in support of her suit.

We are satisfied that the trial court's award of sole title in the parties' home to appellee did not constitute an abuse of discretion.[1] Appellee contributed to the purchase of their house out of her own funds and was employed regularly from the date of their marriage until the birth of their second child, some eight years later. The house provides not only a home for the children, whose custody was awarded to appellee,[2] but also a source of some income.[3] Under these circumstances, we conclude there was evidence to support the trial court's award of title to appellee and that such award was equitable and reasonable. Pearsall v. Pearsall, D.C.App., 197 A.2d 269 (1964).

As to the alimony and child support ordered, the trial court made findings only that (1) appellant was earning an annual *gross* salary of $16,041, (2) he "is able to pay . . . $555 each month," and (3) appellee *"testified* that she reasonably requires for her support and the support of the two minor children . . .

---

1. D.C.Code 1967, § 16–910 provides in pertinent part:
   Upon the entry of a final decree of . . . absolute divorce . . . all property rights of the parties in . . . tenancy by the entirety shall stand dissolved and . . . the court may award the property to the one lawfully entitled thereto or apportion it in such manner as seems equitable, just, and reasonable.

2. Appellant does not challenge the custody award.

3. Appellee had on prior occasions rented to "roomers" one or two of its five bedrooms. Based upon appellee's testimony (R. 12, 49), the equity in the house amounted to approximately $8,500.

$700.00 per month." (Emphasis added.) While we have recognized "[i]t is not necessary in awarding alimony . . . that the trial judge ascertain with *accounting accuracy* the *exact* net worth or income of the husband or the exact financial needs of the wife," Leibel v. Leibel, D.C.App., 190 A.2d 821, 822 (1963) (emphasis added), we have also recently reminded trial judges that "it is *essential* that in exercising . . . discretion [in determining the appropriate amount of alimony and child support] the trial court *first* determine the *net* income (or a reasonable approximation of such) from which a portion is to be set aside for alimony and support payments, as these items are recurring expenditures." Mumma v. Mumma, D.C.App., 280 A.2d 73, 76 (1971) (emphasis added).

A finding as to appellant's net income was particularly necessary here in view of (a) his testimony that deductions (without stating their amounts) for retirement, federal and state income tax and life insurance *were being made* from his *gross* salary and (b) a Statement of Earnings and Deductions by his governmental employer for a pay period some *nine* months *before* trial showing the withholdings then from his salary. The record does contain appellant's Financial Statement but it is unsigned and its monthly net income figure of $778 is unexplained. We have no way of knowing whether the trial court found this Statement, which was unsupported by any financial records, to be credible. Smith v. Smith, D.C.App., 210 A.2d 831, 832 (1965); Vance v. Vance, D.C.App., 212 A.2d 532 (1965).

We note also that the trial court, in addition to ordering appellant to pay $425 in equal semi-monthly installments as permanent alimony "for the support of herself and the two minor children," also "directed" him to pay for the private schooling of the oldest child in the amount of $130 directly to the school. (R. 362). Although the trial court stated in its oral findings that appellant "wants to make the payments to the school" (R. 256), it subsequently stated that "his [appellant's] total *commitment* will be $555.00 a month." Thus, the tuition does not appear to be a voluntary assumption of payment by appellant which he can give up at any time, Hamilton v. Hamilton, D.C.App., 247 A.2d 421, 423 (1968), but rather an integral part of his monthly support obligation. Accordingly, appellant's ability to pay for such education is at issue, Pincus v. Pincus, D.C. App., 197 A.2d 854, 856 (1964); Hoffman v. Hoffman, D.C.App., 210 A.2d 549, 550 (1965), and a determination of his *net* income was necessary to resolve this issue.

As to counsel fees, the trial court directed appellant (1) to pay directly to appellee's attorney $500, (2) to reimburse her for the amount of the retainer fee, *i. e.,* $1,000, that she had already paid this attorney prior to filing suit for divorce, and (3) to repay her in the amount of $300 for what she had also already paid to her attorney for the services of a private detective in preparing her divorce action. An attorney's entitlement to payment from the husband for professional services rendered the wife in a matrimonial action rests exclusively upon D.C.Code 1967, § 16–911(1).[4] Meyers & Batzell v. Moezie, D. C.App., 208 A.2d 627, 629 (1965). The amount of counsel fees to be awarded under this statute must be governed by equitable consideration, Shima v. Shima, 78 U. S.App.D.C. 265, 266, 139 F.2d 533, 534 (1943). Specifically, this court has suggested that the trial court when ordering payment by the husband of an attorney for representation of the wife must consider "the quality and nature of the services performed, the necessity for such services, the results obtained from the services, and the

---

4. This statute provides in pertinent part:
   During the pendency of an action for divorce . . . the court may:
   (1) require the husband to pay . . . to the wife . . . suit money, including counsel fees, to enable her to conduct her case . . . and enforce any order . . . by attachment and imprisonment for disobedience.
   . . .

husband's *ability to pay.*" Ritz v. Ritz, D.C.App., 197 A.2d 155, 157 (1964) (emphasis added).

In this case there was testimony by appellant that he owed over $8,000 to local creditors requiring payments of almost $410 per month. (R. 197–200, 309.) [5] If this evidence were credited by the trial court, *see* Smith v. Smith, *supra*; Vance v. Vance, *supra,* the imposition of a total of $1,500 in counsel fees on top of this rather imposing pyramid of debt and appellant's monthly obligation for alimony and support creates a serious doubt on this record as to his ability to pay such counsel fees. This is so in light of appellant's testimony that (a) he had no source of income other than his government salary at a GS–12, step 3 rate,[6] (b) he owned no securities or real estate and (c) he had but $600 of savings on deposit with his credit union. Here again, the trial court's failure to determine appellant's *net* income leaves us unable to measure the true impact of its award of $1,500 in counsel fees. Mumma v. Mumma, *supra.*

As to the court's order that appellant reimburse appellee for the $300 she had paid her attorney to obtain the investigative services of a private detective in preparing her divorce action, we note her testimony (R. 44–45) that she herself made no fee agreement with the private detective. Thus, her expenditure of $300 appears to have been a payment of her own attorney's expenses in representing her in this divorce action and accordingly constituted "suit money" within the meaning of Section 16–911(1). Compare King v.

King, D.C.App., 286 A.2d 234, 237 (1972), where we discussed the limitation on the husband's obligation to *third party creditors* for debts incurred by his wife prior to commencing a marital action. Thus, the total cost to appellant as a result of appellee's representation by her attorney in this matrimonial action amounted to $1,800. The trial court, therefore, was required to determine under the criteria set forth in Ritz v. Ritz, *supra,* whether such amount was reasonable under all the circumstances of the instant case, including appellant's ability to pay.

In sum, the trial court's determination of appellant's *net* income was in this case absolutely essential to a proper resolution of the issues raised as to his ability to pay alimony and child support, including school tuition, and appellee's counsel fees and expenses in preparing and presenting her divorce action. In the absence of a determination of appellant's net income, the judgment's (1) award of monthly alimony and child support, including tuition payments, (2) award of $1,500 in counsel fees, $500 of which was to be paid directly to appellee's attorney and $1,000 to be paid appellee as reimbursement for her payment of her attorney, and (3) award of $300 as repayment to appellee of an expense incurred by her attorney on her behalf which she had already paid are reversed and the case remanded for further proceedings consistent with this opinion. In all other respects, the judgment of the trial court is affirmed.

Affirmed in part; reversed in part.

5. Appellee, citing Green v. Green, D.C. App., 217 A.2d 658 (1966), vigorously argues that appellant may not escape his obligation to support his family by spending himself into debt and points to the allegedly extravagant nature of the expenditures which occasioned these debts (*e. g.,* a new automobile and $3,500 to $4,000 worth of new furniture for his apartment). Certainly, as we said in *Green,* "husbands [may not] defeat their marital obligations merely by spending themselves into debt." On the other hand, there is nothing in the record to show either that these debts may now be voided or that these creditors (*e. g.,* Commercial Credit Corp., appellant's credit union, American Security & Trust Corp.) are willing to forego payment of these debts.

6. Appellant had worked as the manager of a theater at night after his government job during their marriage until the theater went out of business.