**William L. WOOD, Appellant,**

**v.**

**Loretta H. WOOD, Appellee.**

**No. 9375.**

District of Columbia Court of Appeals.

Argued Jan. 13, 1976.

Decided July 14, 1976.

Rehearing Denied Aug. 27, 1976.

William Jordan Temple, Washington, D.C., for appellant.

Loretta H. W. Harris, pro se.

Before KERN and NEBEKER, Associate Judges, and HOOD, Chief Judge, Retired.

KERN, Associate Judge:

The parties to this appeal were divorced in February 1971. The trial court incorporated in its final order granting the divorce a support and property settlement agreement executed by them prior to the divorce proceeding. Among other provisions in this agreement, appellant husband agreed to pay appellee wife $90 every two weeks for support of their four children.[1]

In April 1974, appellee filed a motion asking the court to increase appellant's support payments to $200 every two weeks, claiming that the children's needs had increased, and to hold appellant in contempt for arrearages.[2] Appellant opposed appellee's motion and, alleging a significant decrease in his income, moved to decrease his support payments to $25 a month per child, or $100 per month total. A hearing was held on these motions and both parties testified and introduced documentary evidence. On February 18, 1975, the court made its findings of facts and entered an order (1) denying appellant's motion to decrease payments and child support and increasing his payments to $125 every two weeks, (2) ordering appellant to appear and show cause why he should not be required to place a trust of $50,000 on his properties or sell his interest therein up to $50,000 and reserve the income for the support of his children, (3) awarding appellee's attorney $700 for legal services rendered, (4) awarding costs of $26.80, (5) granting appellee a judgment in the amount of $1,040 for arrearages, and (6) restraining appellant from encumbering or transferring his property.

Appellant urges on this appeal that (1) there was insufficient evidence of a material change in the children's needs justifying modification of the original support order, (2) there was insufficient evidence that appellant had adequate financial means to justify the modification, (3) there was no basis for requiring a $50,000 trust to protect the needs of the children, and (4) the award of $700 in attorney's fees, in light of the fact that only $500 had been sought, was an abuse of discretion.

In considering a modification of a support order, the trial court must ad-

---

1. Appellant also agreed (1) to maintain hospital and medical insurance for the children, (2) to pay all their medical expenses, and (3) to maintain $10,000 of life insurance during the minority of the children, with appellee named as beneficiary of the policy.

2. Appellant was held in contempt on June 7, 1974, and was ordered to pay to the clerk of the court $1,395 in arrearages and $200 in attorney's fees.

dress itself to two issues: the needs of the children and the ability of the parent to pay. *Sheridan v. Sheridan,* D.C.App., 267 A.2d 343 (1970); *Hamilton v. Hamilton,* D.C.App., 247 A.2d 421 (1968); *Blumenthal v. Blumenthal,* D.C.Mun.App., 155 A. 2d 525 (1959). Although the trial court has broad discretion in modifying a support order, it is "limited by the requirement that there must be first a showing of material change in the circumstances of the parties." *Hamilton v. Hamilton, supra* at 422.

Examining the trial court's order and accompanying findings, we note that no specific finding was made as to the changed needs of appellant's children. The only findings relevant to this issue are the court's conclusory statements that the "[f]inancial needs of defendant's four minor children have materially increased since the present [*sic*] order was entered," and "[p]laintiff's [appellee's] net income of $320.00 each two weeks is inadequate to cover plaintiff's needs for the support of four children." Nor were any findings made as to appellant's net income, although the court did make findings regarding his assets.

■ Since the court did not find what the *current* expenses of the children were, did not make findings concerning the change in circumstances from the time of the original order in February 1971, to the time of the motion to increase in April 1974,[3] and did not even approximate appellant's current net income, we are unable to review the propriety of the court's ruling ordering appellant to increase his support payment. *Cf. Butler v. Butler,* D.C.App., 239 A.2d 616, 617 (1968); *O'Lea v. O'Lea,* D.C.Mun.App., 138 A.2d 486, 487 (1958). Under these circumstances, we would ordinarily remand the case for further findings

based on the evidence adduced at the hearing. *See O'Meara v. O'Meara,* D.C.App., 355 A.2d 651 (1976); *Mumma v. Mumma,* D.C.App., 280 A.2d 73 (1971). However, upon reviewing the record we are persuaded that certain other findings by the court are plainly wrong and without substantial evidence to support them, *see McEachnie v. McEachnie,* D.C.App., 216 A.2d 169, 171 (1966), and that other errors occurred at the hearing. Accordingly we must vacate the trial court's ruling modifying appellant's child support payments and order a new hearing on the twin issues of need and ability.

Our examination of the proceedings and evidence of record reveals only two documents concerning the increased needs of the children: appellee's motion to increase support filed in February 1974, and her financial statement filed in November 1974, at the time of the hearing. In these documents, appellee listed the expenses attributable to the children in the areas of housing and utilities, food, clothing, medicine, transportation, recreation, insurance, tuition, and incidentals. The total expenses were alleged to be $570 per month in February 1971, $840.84 per month in February 1974, and $1,107.50 per month in November 1974.

Appellee's testimony at the hearing concerning these expenses, however, is in conflict with the written figures. For example, appellee testified on cross-examination that her total food bill for seven persons[4] was approximately $240 per month, yet she claimed that she had computed the $300 monthly expense for the four children in her financial statement by taking four-sevenths of her total monthly food bill.[5] In addition, appellee admitted that the *monthly* tuition expense of $142.50 for the oldest child really covered an entire *quarter* of

---

3. *See Sheridan v. Sheridan, supra* at 346; *Mozick v. Mozick,* D.C.App., 245 A.2d 643, 644–45 (1968).

4. Appellee's four children by appellant live with appellee, her husband and their child.

5. Four-sevenths of $240 is approximately $140.

college tuition. These contradictions were never adequately resolved due in part to the trial court's curtailment of appellant's cross-examination of appellee,[6] despite the relevance and propriety of such an inquiry. Furthermore, in the absence of any findings by the court with regard to the children's needs, we have no way of knowing how these conflicting claims were resolved, or whether they were in fact considered and resolved by the court. *See Grasty v. Grasty,* D.C.App., 302 A.2d 218 (1973).

As to appellant husband's ability to pay increased support, the court found "[D]efendant's assets in excess of $150,000 are adequate to contribute his fair share of support." The court's finding that appellant's assets amounted to in excess of $150,000 rested upon subsidiary findings that two properties in the District were valued at $40,000 and $100,000, respectively, and that a property in Virginia in which appellant owned two-thirds interest was worth $40,000. But the virtually uncontradicted evidence presented by appellant was that the first parcel was worth $11,000 and the second $80,000.[7] No direct evidence was adduced as to the value of the third, which appellant denied owning, and there was little probative evidence of his ownership of the property.

The evidence presented at the hearing concerning appellant's present net income is equally incomplete. Although the court found that appellant received income of $800 monthly from rental of two townhouses on Corcoran Street, the only direct evidence in the record is appellant's statement that the income from the houses was $600 to $700 per month and expenses were $300 per month. While evidence was presented of appellant's *past* income, which was derived from his government job and a job with a parking garage, he had retired on disability from the former and quit the other prior to the hearing.[8] The record reflects only that he received as federal disability pay $384 per month.

Although trial courts have considerable discretion in determining awards of child support, that discretion was abused here when the trial court awarded increased support payments after a hearing that did not include a full exploration and determination of the needs of the children, based on findings of a financial ability on the part of the husband inconsistent with the proof contained in the record, and without any attempt to determine the actual needs of the children or to approximate appellant's net income.[9] Accordingly,

6. The trial court exhibited impatience with the efforts by appellant's counsel to elicit information from appellee concerning the children's needs, and noticeable irritation over the fact that appellant had allowed his payments to fall behind.

7. In fact, appellee's attorney apparently accepted the $80,000 estimate at trial.

8. The court found as a fact that "defendant embarked upon a course of conduct to reduce his $1,100 monthly net income, and to defeat his responsibilities to his children." Appellee testified that appellant threatened to stop working if appellee went to court to enforce the support order. The evidence shows, however, that appellant's retirement or disability from federal service occurred after medical examination in what appears to have been the normal civil service practice. Although the court refers in its finding to medical opinions by two doctors that appellant was able to work, neither testified nor

were their diagnoses actually received in evidence. Thus it is not clear that appellant's reduction of income was voluntary. *See Tydings v. Tydings,* D.C.App., 349 A.2d 462 (1975); *Hamilton v. Hamilton, supra.*

9. The court by its order awarded appellee a total of $5,016 in child support, attorney's fees, costs, and judgment for arrearages, despite the fact that the evidence showed appellant's income from disability retirement was to be only $4,608 per year. Even if rental income from the Corcoran Street houses is considered, appellant's *net* income and thus his ability to pay increased support, is undetermined. In a similar case, this court said in *Mumma v. Mumma, supra,* at 76–77:

We recognize that trial judges have a considerable measure of discretion in determining the appropriate amount of alimony and child support, but it is essential that in exercising such discretion the trial court

we conclude that there is no "substantial evidentiary basis" justifying an increase in child support payments. *See McEachnie v. McEachnie, supra* at 171. The order below increasing appellant's child support obligation is vacated and the case is remanded for a new hearing at which the issues of need and ability may be explored fully, and for new findings of fact based on probative evidence adduced at the hearing.

At this hearing, the court should also consider two additional issues raised by appellant on this appeal: (1) the propriety of ordering appellant to show cause (a) why a trust should not be placed on his property or (b) why he should not be forced to sell $50,000 worth of his property and deposit the proceeds in a certificate account reserving the income for support of his children, and (2) the award of attorney's fees.

Although domestic relations courts have certain equity powers, it is not clear that under the circumstances here the court's particular order is appropriate. The applicable statutes in the District of Columbia provide that a support order may be enforced by attachment of property and imprisonment for disobedience, by enjoining the disposition of property, or by sequestering property and applying income to the payments due. D.C.Code 1973, §§ 16–911, –916. No statutory authority expressly grants the courts in the District of Columbia the power to impose a trust on property or force a conversion of assets from one form to another. Moreover, no reason presents itself for the entrustment or sale of $50,000 worth of property rather than a specific piece of property or any property in an amount adequate to meet appellant's child support payments.

It is of course possible that the trial court intended by its order to apply the procedures expressly authorized by section 16–911 in order to enforce appellant's payment of child support. However, that order did not employ the specific devices authorized by statute and, since this case must be remanded for other reasons, we believe the court at the rehearing should consider employing the enforcement mechanisms the statute provides, *viz.,* attachment and sequestration or imprisonment for contempt, before resorting to the imposition of a trust.

■ Appellant also argues that the award of $200 more in fees than was requested by appellee's attorney constitutes an abuse of discretion, and we agree. Such an award seems to include an improper punitive element along with the proper measure of reimbursement. *See* D. C.Code 1973, § 16–911. The award of $700 in attorney's fees must be vacated, and on remand the trial court may order appellant to pay an appropriate fee in light of "the quality and nature of the services performed, the necessity for such services, the results obtained from such services, and the husband's ability to pay." *Ritz v. Ritz,* D.C.App., 197 A.2d 155, 157 (1964); *see Grasty v. Grasty, supra* at 220–21.

In sum, the parts of the trial court's order (1) increasing child support and denying appellant's motion to decrease child support, (2) directing appellant to show cause why a trust should not be imposed on his property, and (3) awarding $700 in attorney's fees are vacated and the case is remanded for further proceedings consistent with this opinion. The parts of the court's order (1) awarding $26.80 in costs, (2) awarding $1,040 in judgment for ar-

---

first determine the net income (or a reasonable approximation of such) from which a portion is to be set aside for alimony and support payments, as these items are recurring expenditures. Such a determination is also relevant to the question of the appropriate sum to be allowed the opposing party for counsel fees and other expenses

incident to the litigation. . . . Accordingly in the absence of any finding with respect to the husband's net income, we remand the case to the trial court for rehearing and further findings. [Footnote omitted.]

*See also Grasty v. Grasty, supra.*

rearages, and (3) restraining appellant from encumbering or transferring his property are affirmed.[10]

Pending the rehearing on these motions, the previous order awarding appellee $90 every two weeks shall remain in effect.

*So ordered.*

10. In a memorandum filed with this court, appellee alleges that appellant has transferred certain property to his present wife. On remand, the trial court should consider these allegations as a motion to hold appellant in contempt for violating this order and should proceed accordingly.