**Reuben W. MOORE, Jr., Appellant,**

v.

**Sidney H. MOORE, Appellee.**

**No. 12312.**

District of Columbia Court of Appeals.

Argued March 7, 1978.

Decided Aug. 29, 1978.

764

terclaim conforming to the evidence, since the court at the conclusion of trial had orally awarded custody of the minor child to the mother and ordered the father to pay child support. The court also granted the father visitation rights, conditioned on a $7,500 bond. Later, the court awarded the mother separate maintenance, as well as her counsel fees. Appellant, the father, argues primarily that the court improperly permitted appellee to amend her pleadings, pursuant to Super.Ct.Dom.Rel.R. 15(b), and that, in any event, the evidence of record did not support the court's findings and conclusions.

We conclude that the trial court properly allowed post-trial amendment of the pleadings to permit appellee, the mother, to claim custody, child support, a bond for visitation rights, and attorneys' fees. We further conclude, however, that the court erred in permitting amendment of the pleadings to claim separate maintenance. We conclude, finally, that the record is not adequate to support the court's particular assessments of child support, the visitation rights bond, and counsel fees. The case accordingly must be remanded for further proceedings.

## I. The Facts; Proceedings to Date

Reuben and Sidney Moore, plaintiff-appellant and defendant-appellee, respectively, were married on October 19, 1968, in the District of Columbia. Their only child, Jessica Moore, was born on August 4, 1973. The marriage deteriorated, especially in the fall of 1975 when Sidney Moore learned of her husband's infidelity, whereupon she ended their conjugal relations. According to Mrs. Moore, shortly thereafter—sometime during early December—Reuben Moore stopped replenishing the family checking account. The culmination of this marital decline occurred in late December, 1975, when Sidney Moore moved with Jessica to her parents' home in Schenectady, New York.

Thomas Fortune Fay, Chevy Chase, Md., with whom B. Van Denburg Hall, Fairfax, Va., and William Thompson, Washington, D. C., were on brief, for appellant.

Pamela B. Dulles, Washington, D. C., with whom Elizabeth Guhring, Washington, D. C., was on brief, for appellee.

Before GALLAGHER and FERREN, Associate Judges, and MOULTRIE, Chief Judge, Superior Court of the District of Columbia.*

FERREN, Associate Judge:

This is a custody case brought by the father. After trial, the court permitted the mother to amend her pleadings with a coun-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a). Designated as Chief Judge of the Superior Court of the District of Columbia effective June 22, 1978.

Reuben Moore soon initiated a custody action in New York. The court orally granted temporary custody of Jessica to Mrs. Moore, with visitation rights for Mr. Moore. On February 22, 1976, pursuant to a plan aided by a detective he had hired, Reuben Moore took Jessica from the physical custody of her maternal grandfather and brought her to Washington, D.C.[1] Sidney Moore followed, but Mr. Moore refused to return the child. On February 26, 1976, Sidney Moore initiated a habeas corpus proceeding in the District of Columbia seeking custody of Jessica.

At this time Reuben Moore took Jessica, then 2½ years old, on a 3½ week excursion to Europe and the Bahamas. After his return, while leaving a hospital where he had been visiting his ill father on March 17, 1976, Reuben Moore was confronted and grabbed by his wife and her parents. They wrested control of the child from him and returned, with Jessica, to Schenectady.

On April 2, 1976, Reuben Moore filed an opposition to his wife's habeas corpus petition. He also filed the present action: a complaint for custody. Sidney Moore sought first to have the suit dismissed on jurisdictional grounds; but after the New York court suggested that she submit the pending custody issues to the District of Columbia court, she withdrew the jurisdictional challenge and answered the complaint on June 30, 1976. The matter came to trial on October 20–21, 1976, in the Family Division of the Superior Court.

At the conclusion of trial, the court orally awarded custody and $500 per month child support to the defendant, Sidney Moore. The judge, recognizing that "there ha[d] not been an affirmative pleading requiring alimony" did not award any support for Mrs. Moore herself but, somewhat cryptically, remarked that "the defendant may yet have her opportunity to pursue the issue of alimony" (actually separate maintenance). The court then asked for motion papers on the issue of awarding attorneys' fees to

defendant, reserving judgment on that issue until a later date. The court also granted Reuben Moore visitation rights, conditioned on his posting a $7,500 bond.

On October 27, 1976, Sidney Moore filed a motion to conform the pleadings to the evidence, Super.Ct.Dom.Rel.R. 15(b), as well as a motion for award of counsel fees. In the first motion, Mrs. Moore sought to assert a counterclaim for custody, child support, separate maintenance, and counsel fees (in connection with the District of Columbia custody litigation only). In the second motion she asked for the same counsel fees, specified the reasons for requesting them, and itemized the matters and amounts claimed.

By written order of February 28, 1977, the court granted the motion to conform. It awarded to defendant Sidney Moore custody of Jessica, child support of $500 per month, separate maintenance of $500 per month, and counsel fees in the amount requested, $5,916.65. The court granted plaintiff Reuben Moore visitation rights, subject to the continued posting of a $7,500 bond. The court's order included extensive findings of fact and conclusions of law. The court subsequently denied Reuben Moore's motions for stay of the entry of judgment and for a new trial, and issued a written memorandum of its reasons. Plaintiff Reuben Moore now appeals.

## II. Alleged Trial Court Reliance Upon Improper Presumptions

Appellant maintains that the trial court improperly accorded presumptive significance to the factors of "motherhood" and "physical possession" of the child in determining the question of future custody. We disagree.

■ Neither the oral ruling of the judge nor the court's written findings of fact and conclusions of law reflect an express or implied reliance upon the fact that Mrs. Moore was the child's mother, or that she

---

1. It appears that the written court order granting Sidney Moore temporary custody was not entered until February 23, 1976, one day after

Reuben Moore had taken physical custody of his daughter.

had actual possession of Jessica for most of the period between her departure from the family home and the trial. The court's mere inclusion of the relevant fact that the child had resided with the mother "except for a brief period of time, for most of the child's life," does not indicate that it was a dispositive or even influential consideration, or, as appellant contends, that the court believed either maternity or present physical possession was presumptively significant to the custody determination.

In summary, it does not appear that the trial court in fact employed either of the allegedly improper presumptions in determining the issues of the suit.[2]

### III. *Alleged Trial Court Reliance on the New York Court Order*

Appellant makes much of the fact that when he took his daughter from her maternal grandfather on February 22, 1976, there was no outstanding written court order granting custody to his wife. *See* note 1, *supra*. He argues that Mrs. Moore's reliance upon the New York court's temporary custody order of February 23 was therefore fraudulent, in that she misled the District of Columbia court into believing, erroneously, that Mr. Moore had kidnapped the child in violation of an outstanding judicial decree. He further maintains that the trial court erred by relying upon this faulty factual premise in rendering its decision.

Mrs. Moore did have what was asserted to be a temporary custody order marked at trial, but the court sustained objection to its admission on authentication grounds. As a result, it was never entered into evidence. It appears that the trial court did not consider Mr. Moore's alleged violation of an outstanding written court order in resolving any of the issues. In fact, apparently the court's decision was not even influenced by Mr. Moore's conceded disregard of the New York court's oral temporary custody order

of December 30, 1975. The trial court, in fact, expressly disavowed any reliance on the New York order when, on April 7, 1977, it issued the memorandum and order denying Reuben Moore's new trial motion.

■ The court did refer in its memorandum to the fact that "plaintiff is quite capable of, again, taking the child from the jurisdiction of this court or any other court of the United States. He has a history of having done so." But this finding was amply supported by both parties' evidence and does not reflect a trial court understanding that Mr. Moore, in doing so, had violated a judicial decree.

Even if we assume, moreover for the sake of argument, that Mrs. Moore misrepresented the status of the New York judicial proceedings, we cannot find that it had any effect upon the deliberations and decision of the trial judge in this case. We therefore reject this claim of error.

### IV. *Post-Trial Amendment of the Pleadings*

We turn now to the principal issue on appeal: the court's granting of appellee Sidney Moore's motions to conform the pleadings to the evidence and to receive an award of attorneys' fees.

At the close of trial, the trial court indicated its belief that the custody and child support matters, including visitation rights and related bond, were ripe for resolution. The court, however, indicated some hesitancy about the propriety of deciding the separate maintenance and attorneys' fees questions on the state of the evidence at that time. Nonetheless, the trial judge entertained and granted appellee's post-trial motion to conform the pleadings to the evidence, including a counterclaim for custody, child support, separate maintenance, and attorneys' fees. The judge then proceeded to resolve not only the custody and child

---

2. Because the trial judge did not invoke the "tender years" presumption, *i. e.*, that the best interests of young children are served by custody in the mother, *see Ross v. Ross*, D.C.App., 339 A.2d 447 (1975), we have no occasion in this case to pass upon appellant's arguments

that reliance on such a presumption would constitute an unconstitutional gender-based discrimination or, at least, would transgress the mandate of D.C.Code 1977 Supp., §§ 16–911(a)(4), –914 (sex shall not be controlling factor in custody decisions).

support matters but also the questions of separate maintenance and attorneys' fees.

Appellant now asserts, as he did at trial, that because appellee requested no affirmative relief in pretrial pleadings the court erred in affording her any relief. It is one thing, he argues, to deny his claim for custody; it is another to award custody to appellee, as well as child support, separate maintenance, and attorneys' fees. He essentially contends, therefore, that the court abused its discretion in permitting the post-trial pleading amendment under Super.Ct. Dom.Rel.R. 15(b), since he was unaware at trial that the matters ultimately stated in appellee's counterclaim were at stake; he was not prepared, nor given an adequate opportunity, to contest them.

 Our treatment of this argument must begin with Rule 15(b), which is identical to Fed.R.Civ.Pro. 15(b).[3] Our analysis is accordingly aided by authorities which have interpreted the federal rule. Rule 15(b) is an attempt to favor substance over form, *i.e.,* "to avoid the tyranny of formalism," *Rosden v. Leuthold,* 107 U.S.App.D.C. 89, 92, 274 F.2d 747, 750 (1960), and thus promote the resolution of cases on their merits by permitting the amendment of pleadings to reflect the actual litigation which transpired. Wright & Miller, Fed.Prac. & Proc., Civil § 1491. Courts accordingly are empowered to permit parties to amend pleadings after trial—even after judgment—to add claims, defenses, and counterclaims, as long as the proposed augmentation of the pleadings encompasses matters expressly or impliedly tried by consent of the parties. *Id.* at §§ 1491–93. *See Seek v. Edgar,* D.C.App., 293 A.2d 474, 476–77 (1972). In

fact, if a court finds such express or implied consent, it is authorized—indeed mandated—to resolve those issues even if the pleadings are not amended. Wright & Miller, *supra* at § 1493. If issues not raised in pleadings are tried by express consent of the parties, there can be no question about the propriety of permitting amendment. The difficult issue arises when, as in most Rule 15(b) cases, "implied consent" is asserted.

 Whether parties have impliedly contested a matter—*i. e.,* whether parties recognize that an issue not stated by the pleadings entered the case, see *Wasik v. Borg,* 423 F.2d 44 (2d Cir. 1970)—is determined by searching the trial record for indications that the party contesting the amendment received actual notice of the injection of the unpleaded matters, as well as an adequate opportunity to litigate such matters and to cure any surprise from their introduction. Wright & Miller, *supra* at § 1491. *See Seek v. Edgar, supra; Wasik v. Borg, supra.* If a party does not receive, either before or during trial, timely notice that a matter is being litigated, he or she can justifiably assert prejudicial deprivation of a "day in court," should the matter be decided.

 The clearest indications of a party's implied consent to try an issue lie in the failure to object to evidence, or in the introduction of evidence which is clearly apposite to the new issue but not to other matters specified in the pleadings. Wright & Miller, *supra* at § 1493. *Cf. Cole v. Layrite Products Co.,* 439 F.2d 958 (9th Cir. 1971) (inclusion of issues only "inferentially" suggested by "incidental" evidence not permit-

---

3. The Domestic Relations Rules incorporate by reference Super.Ct.Civ.R. 15(b), which provides as follows:

AMENDMENTS TO CONFORM TO THE EVIDENCE. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so

to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

ted under Rule 15(b)). Having in mind the tension between the desire to abandon formalism and, on the other hand, the need to assure fair notice and opportunity to litigate, we turn to the facts to assess whether the trial court's grant of permission to amend and, ultimately, its resolution of the additional issues were within the purview of discretion granted under Rule 15(b).

### A. Custody

██ Although at the time of trial only appellant, and not his wife, had filed an action for custody, we conclude—without difficulty—that appellant was on timely notice that the court would decide not merely whether he was entitled to custody but, more broadly, would determine *who* was entitled to custody. Mrs. Moore asserted in her answer to appellant's complaint that "the best interests of the child" would be served by the child's being in her custody. Moreover, both parties introduced evidence supporting their respective qualifications for custodian. In addition, appellant conceded at trial that the New York court had suggested that all issues pertinent to custody be tried in his District of Columbia action; this was the reason that Mrs. Moore had withdrawn her jurisdictional challenge. Finally, Mrs. Moore's own habeas corpus petition filed in the District of Columbia prior to the present action manifested her intention to gain custody.

Appellant accordingly can claim no surprise or lack of notice or opportunity to litigate. The issue of Mrs. Moore's right to permanent custody—even if not raised by the pleadings—clearly was tried by the parties and the court. *See Johnson v. Ridgeway,* D.C.App., 354 A.2d 851 (1976); *Seek v. Edgar, supra; Jacobson v. Jacobson,* D.C. App., 277 A.2d 280, 282–83 (1971). The trial court, therefore, did not abuse its discretion by permitting Mrs. Moore to file a post-trial counterclaim for custody, pursuant to Rule 15(b), and deciding the issue.

### B. Child Support

The pretrial pleadings do not include a claim for child support. Our determination, therefore, again must be whether the issue was litigated by implied consent. For two reasons we find that it was.

██ First, and most germane, we believe that the resolution of child support inheres in a custody battle where the best interests of the child are the focal concern. *See Cobbe v. Cobbe,* D.C.Mun.App., 163 A.2d 333, 336 (1960). The trial judge recognized this relationship when she opined that a grant of support was required by the court's duty to afford complete relief. Second, our conclusion is bolstered by appellee's introduction of evidence of the financial needs of the child. As appellee points out, this evidence was not contested on relevance grounds; it served to put appellant on notice. *See* Wright & Miller, *supra* at § 1493.

██ In light of these two factors, we conclude that appellant received ample notice that the matter of child support would be determined and that he therefore impliedly consented. The trial court accordingly did not abuse its Rule 15(b) discretion in permitting appellee's amendment of the pleadings to raise the issue of child support.[4]

### C. Visitation Rights and Bond

██ Appellant does not dispute that visitation rights are a proper subject for determination as part of the overall custody question. In her Rule 15(b) motion, appellee did not request imposition of a bond covering her husband's visits with Jessica. However, because trial courts are given broad discretion in resolving custody cases, *O'Meara v. O'Meara,* D.C.App., 355 A.2d 561 (1976), and ought to fashion relief to foster and safeguard a child's best interests, *see Crain v. Crain,* D.C.App., 209 A.2d 257 (1965), we find no fault with the imposition

---

4. We note also that by the terms of Super.Ct. Dom.Rel.R. 54(c), the trial court is required to afford all "the relief to which a party . . . is entitled," whether actually prayed for or not.

This rule is analogous to Rule 15(b), with similar limitations. *See* Wright & Miller, *supra* at §§ 2662, 2664.

of a bond upon a parent whose history reflected a capacity for absconding with the child. The judge was acting within the scope of her duties and powers to grant complete relief. Rule 54(c). She did not abuse her discretion.

### D. Attorneys' Fees

■ This court has determined that even though there is no specific statutory authorization for attorneys' fees awards in child custody cases, courts are empowered to award them to a parent who has enlisted legal assistance to protect the interests of the child. *Eisenberg v. Eisenberg,* D.C. App., 357 A.2d 396, 401–02 (1976); *Paine v. Paine,* D.C.App., 267 A.2d 356 (1970). This apparent exception to the American Rule disfavoring counsel fee awards to the prevailing party is justified by recharacterizing such fees as awards of "necessaries" for the child, not as awards of counsel fees per se. *Paine v. Paine, supra.*

■ Although counsel fees for the assertion of a minor's interests are not as integral to a custody claim as child support, we believe that, given legal precedent, the prospect of incurring such fees would surely be within the contemplation of an opposing party. We note in this connection that evidence of expenditures for counsel fees to District of Columbia lawyers was admitted without objection. We also recognize that the trial judge initially reserved judgment on the issue, entertained a *motion and opposition,* and then held a hearing before awarding the fees. On this record we find no prejudicial surprise to appellant. We therefore affirm the court's decision to permit amendment of the pleadings to consider resolution of the attorneys' fees issue. Super.Ct.Dom.Rel.R. 15(b), 54(c).

### E. Separate Maintenance

■ The grant of spousal support is a different matter. The initial pleadings did not mention a claim for separate maintenance, which is not customarily a part of a child custody suit between parents whose marital relationship had not been—and was not being—litigated. While evidence of Mrs. Moore's financial needs was admitted without objection relatively late in the proceedings, we cannot conclude that this evidence was so uniquely pertinent to her support alone, in contrast with the custody or the child support issues, that it justifies our concluding that appellant had adequate, timely notice of, and an opportunity to contest, a claim by his wife for her own support. We find no other indication of record that appellant impliedly consented to try his wife's support claim, Rule 15(b), nor can we conclude that the award was a proper, supportable element of full relief in the child custody action. Rule 54(b). We therefore find an abuse of trial court discretion in permitting amendment of the pleadings to include separate maintenance and, thereafter, in making such an award.[5]

### V. The Trial Court's Findings and Conclusions; Adequacy of the Evidence

■ Trial court determinations of custody, child support, visitation rights, and counsel fees, after proper pleading, are subject to reversal only for clear abuse of discretion. *O'Meara v. O'Meara, supra* (custody); *Wood v. Wood,* D.C.App., 360 A.2d 488, 491–92 (1976) (child support and attorneys' fees); *Eisenberg v. Eisenberg, supra* at 402 (attorneys' fees); *Hamilton v. Hamilton,* D.C.App., 247 A.2d 421 (1968) (child support). To assure proper review according to this standard, the rules of court require detailed, written findings of fact and separate conclusions of law upon all matters. Super.Ct.Dom.Rel.R. 52(a); *Utley v. Utley,* D.C.App., 364 A.2d 1167, 1170 (1976); *O'Meara v. O'Meara, supra.* If a trial court fails to document its findings and conclusions, we must remand for that purpose. *Wood v. Wood, supra; O'Meara v. O'Meara, supra.*

■ With respect, first, to custody, we cannot hold that the court abused its discre-

---

5. At the close of trial, the court itself expressed doubts regarding the propriety of "alimony" (meaning separate maintenance). Without explanation, however, the court did find such an award supportable and granted $500 per month in the written order later entered.

tion in concluding that Jessica Moore's best interests would be served by granting custody to Mrs. Moore, with conditional visitation rights for Mr. Moore. *Utley v. Utley, supra; O'Meara v. O'Meara, supra; Ross v. Ross, supra; Lee v. Lee,* D.C.App., 307 A.2d 757 (1973); *Crain v. Crain, supra.* The factual findings that "the child ha[d] fared well in [the] custody" of her mother who "is a fit and proper person to have custody," and that several specified actions of the father suggest that although he "obviously loves the child" he does not have "the disposition to be the best custodian of the child," are amply supported by the evidence adduced at trial.[6]

The same is not true, however, of the awards of child support, attorneys' fees, and the determination of the amount of the bond for visitation rights. Judged against the standards we have established, the findings and conclusions of the court as to these three matters are inadequate.

 The amount of a child support award is dependent on both the needs of the minor and the respective abilities of the parents to pay. *Wright v. Wright,* D.C. App., 386 A.2d 1191 (1978); *Wood v. Wood, supra* at 491; *Smith v. Smith,* D.C.App., 344 A.2d 221, 223 (1975); *Hamilton v. Hamilton, supra* at 422. The amount properly awardable for counsel fees turns upon the nature and quality of the services performed, whether or not the services were incurred in the best interests of the minor, and, again, on the respective financial abilities of the parents. *Wood v. Wood, supra* at 492; *Eisenberg v. Eisenberg, supra* at 402; *Grasty v. Grasty,* D.C.App., 302 A.2d 218, 220 (1973). We believe, similarly, that the amount of a visitation bond—intended as it is to assure compliance with the terms of the visitation privileges—must be closely tied to pecuniary ability. Thus, in all cases we have indicated that the record must reflect a relatively thorough investigation both of the child's actual needs and at least

of a "reasonable approximation" of the parents' respective net incomes. *Wood v. Wood, supra* at 490–92; *Grasty v. Grasty, supra* at 219–220.

> [I]t is essential that in exercising [its] discretion the trial court first determine the net income (or a reasonable approximation of such) from which a portion is to be set aside for alimony and support payments, as these items are recurring expenditures. Such a determination is also relevant to the question of the appropriate sum to be allowed the opposing party for counsel fees and other expenses incident to the litigation. [*Mumma v. Mumma,* D.C.App., 280 A.2d 73, 76 (1971) (footnote omitted).]

 We cannot discern in the trial court's findings of fact and conclusions of law a sufficient determination of Mr. and Mrs. Moore's respective abilities to pay. The only pertinent evidence at trial—reflected in the court's findings—was that appellee had resorted to public assistance, whereas appellant had an annual gross income of $44,000, and one of the corporations of which he was president had recently made a $30,000 cash downpayment on a $130,000 building. The record indicates, in addition, that the home on Capitol Hill is held in the names of both parties, and that appellee has been receiving financial aid from her parents, primarily on a loan basis. Although there appears to be a significant disparity between Reuben and Sidney Moore's respective resources, we cannot say that the record or the court's findings provide a detailed enough financial picture to give us confidence that each party's net disposable income, based on all legitimate financial obligations, has been analyzed. The trial court must weigh Jessica Moore's needs (which were established by uncontested evidence proffered by her mother) against the net monthly income and other resources available to her father, as well as

---

6. Appellant's argument that the court's findings and conclusions do not address the issues raised by his complaint for custody is specious, in light of the ultimate resolution of the custody contest, based on specific findings, in appel-

lee's favor. It was not necessary for the court to use any particular words to convey the idea that appellant was not entitled to prevail on his complaint.

her mother, and thereby reach a reasonable result. *See id.; Hamilton v. Hamilton, supra* at 422; *Smith v. Smith, supra* at 223. We therefore must remand the case for further hearing, findings, and conclusions reflecting the considerations outlined above for each category of award. *Wood v. Wood, supra; O'Meara v. O'Meara, supra.*

In summary, although it was proper for the trial court to consider three "impliedly tried" matters—child support, attorneys' fees, and visitation rights with bond—as fit subjects for resolution, it was not proper for the court to decide these issues upon an incomplete factual record, without reference to the prescribed standards for such awards.

### VI. *Conclusion*

We affirm the award of custody. We reverse the award of separate maintenance. We remand the issues of child support, counsel fees, and visitation rights and bond to the trial court for further proceedings, findings, and conclusions consistent with this opinion. The monthly child support payments and bond requirements shall remain in effect pending final resolution.

*So ordered.*