David MARTIN, Appellant,

v.

Betty TATE, Appellee.

Nos. 83–663, 83–718.

District of Columbia Court of Appeals.

Argued May 8, 1984.

Decided May 13, 1985.

Burton Yavener, Silver Spring, Md., for appellant.

Aileen A. Johnson, Washington, D.C., for appellee.

Before NEWMAN, BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

In this child custody and support case, appellant presents several challenges to the trial court's award of $3,135 in attorney's fees to appellee. Only one of his arguments has merit. We reverse that portion of the award which grants $650 to appellee for the services of her North Carolina attorney, and we remand the case to the trial court for clarification or correction of an apparent typographical error in the court's order. In all other respects, however, we affirm the judgment.

I

In the fall of 1971 appellant and appellee became romantically involved. Shortly thereafter appellee learned that appellant was already married to another woman. Nevertheless, the relationship continued over the next nine years, resulting in the birth of three children, all of whom lived

with appellee in her apartment in a suburb of Washington. Appellee eventually grew tired of being the "other woman,"[1] and in January 1981 she moved with her children to North Carolina. The parties remained in contact, however, and appellant continued to visit the children. In December 1981, after one such visit, appellant took the children back with him to the District of Columbia.

After seeking the aid of the police and an attorney in North Carolina, appellee filed this suit in the Superior Court of the District of Columbia, seeking permanent custody of the children and attorney's fees. Her complaint was later amended to include a request for $450 a month in child support. After a hearing the trial court entered an order granting appellee permanent custody of the children. The court also awarded appellee $300 a month in child support and "[s]ubject to verification ... attorney's fees ... incurred ... in North Carolina and the District of Columbia in prosecuting this action."

Shortly after the entry of this order, appellee's attorney, a member of the Urban Law Institute of the Antioch School of Law,[2] submitted an affidavit itemizing the work she had performed in appellee's case, in support of her claim for a $4,970 legal fee. Attached to the affidavit were copies of two statements of account and two receipts from appellee's North Carolina attorney totaling an additional $650.

In February 1983, barely a month after the court entered its order, appellant filed a motion for reduction of child support. By the time of the hearing on the motion, appellant was already $600 in arrears on his child support payments. On May 23 the court entered a supplemental order granting appellant's motion and reducing the amount of child support to $200 per month, effective July 1. The court also reduced his obligation for appellee's District of Columbia attorney's fees to one-half of the $4,970 originally awarded, making appellant's total obligation for attorney's fees $3,135,[3] which, along with the arrearages, he was to pay at the rate of $100 per month until discharged. The court specifically ruled, however, that appellant "should pay [appellee] $650 for the attorneys' fees she incurred in North Carolina...." To guarantee the payment of the arrearages, future child support, and attorney's fees, the court directed appellant to execute a wage assignment with his employer for $300 a month until the arrearages and the attorney's fees were fully paid, at which time the wage assignment would be reduced to $200 a month.

Appellant attacks the award of attorney's fees and the May 23 order on several grounds. First, he contends that the trial court had no jurisdiction to make any such award at all. Next he argues that the award of legal fees to the Urban Law Institute was improper because "[t]here [was] no showing that these were fee charges made to appellee for which she [was] seeking reimbursement, ... no showing that the fees were being paid to an attorney pursuant to some fee arrangement, [and] ... nothing to indicate that appellee would have been charged any legal fee had she not prevailed." He also maintains that the court erred in awarding appellee $650 for the services of her North Carolina counsel because it "made no inquiry as to the nature or quality of services rendered nor the results of the litigation in North Carolina which were fruitless and unnecessary," and because the amount was never proven or reduced to a judgment. Finally, appellant maintains that even if the attorney's fee award is allowed to stand,

---

1. Appellant's wife was aware of her husband's ongoing affair with appellee almost from the time it began, but she accommodated herself to it. Appellant maintained an uneasy equilibrium between his marriage and his relationship with appellee.

2. *See Cahn v. Antioch University,* 482 A.2d 120, 127 n. 13 (D.C.1984).

3. *I.e.,* $2,485 (half of $4,970) for appellee's District of Columbia counsel, plus $650 for her North Carolina counsel.

the portion of the court's May 23 order directing an assignment of wages for attorney's fees under D.C.Code § 16–911(a)(4) (1981) was error because "it was the very first order for the payment of such counsel fees and therefore appellant could not [have been] and was not in arrears of this court-ordered payment."

## II

In the District of Columbia, attorney's fees are recoverable by statute in five types of domestic relations cases: (1) actions for divorce or annulment of a marriage, D.C.Code § 16–911(a)(1) (1981); *Darling v. Darling*, 444 A.2d 20, 23 (D.C.1982); *Ritz v. Ritz*, 197 A.2d 155, 156–157 (D.C. 1964), (2) actions by a former spouse to recover alimony or child support arrearages, D.C.Code §§ 16–911(a)(1), 16–914 (1981); *Smith v. Smith*, 445 A.2d 666 (D.C.1982), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 749, 74 L.Ed.2d 968 (1983); *Carr v. Haynes*, 374 A.2d 868 (D.C.1977); *Junghans v. Junghans*, 72 App.D.C. 129, 112 F.2d 212 (1940), (3) actions for spousal or child support against a husband or wife, or against a former spouse for child support, D.C. Code § 16–916(a) (1981), (4) actions for alimony against a former spouse who obtained a foreign *ex parte* divorce, D.C.Code § 16–916(b) (1981), and (5) actions against "any father or mother" for the support of minor children, D.C.Code § 16–916(c) (1981).[4]

No statute specifically authorizes an award of attorney's fees in an action for the custody of children. In *Paine v. Paine*, 267 A.2d 356 (D.C.1970), however, we held that a trial court had the authority to order the payment of attorney's fees to the custodial parent in such a proceeding "not as counsel fees per se to the mother, but as reimbursement to her for necessaries for the minor children." *Id.* at 357. If the trial court determined "that the engagement of counsel by the mother was necessary to protect the interests and welfare of the children," it could award her attorney's fees incurred in defending the action. *Id.* at 358; *accord, Moore v. Moore*, 391 A.2d 762 (D.C.1978); *Eisenberg v. Eisenberg*, 357 A.2d 396 (D.C.1976).[5]

The rationale for this holding is that once there has been a determination of custody through a court decree, as in *Paine* or *Moore*, or a separation agreement, as in *Eisenberg*, the custodial parent who successfully defends a subsequent action for custody has acted in the best interests of the child, and the litigation costs he or she incurs are necessaries furnished to the child to protect its welfare. Although in this case there was no prior legal determination of custody, we see no reason not to follow *Paine*. While we recognize that, in the absence of a custody decree, each parent has an equal right to the custody of his or her children, *see Albergottie v. James*, 470 A.2d 266, 270 (D.C.1983), we believe that appellee's *de facto* custody of her children long before the entry of the custody decree entitled her to recover attorney's fees under *Paine* and its progeny. For nine years appellee sustained a relationship with appellant, during which she bore him three children. She maintained her own apartment, however, and the children lived with her at all times. The court specifically found that the children's best interests would be served by awarding appellee custody.[6] In these circumstances, we hold that the court had authority under *Paine* to award her attorney's fees as well.

4. Under our code, "[a] child born in wedlock or born out of wedlock is the legitimate child of its father and mother...." D.C.Code § 16–908 (1981). Appellant has not contested the paternity of appellee's three children.

5. The same reasoning would apply, of course, if a father with custody were defending against a custody action brought by the mother.

6. The "best interests of the child" standard applies to custody disputes, regardless of whether the child is born in or out of wedlock. *Bazemore v. Davis*, 394 A.2d 1377, 1379 (D.C.1978) (en banc); *accord, Albergottie v. James, supra*, 470 A.2d at 271. Appellant does not challenge the court's decision to award custody of the children to appellee.

## III

■ Appellant maintains that the trial court should not have awarded attorney's fees to appellee for the services performed on her behalf by the Urban Law Institute, a non-profit, public service legal organization.[7] His argument is without merit. In *Frazier v. Franklin Investment Co.*, 468 A.2d 1338 (D.C.1983), an action brought under the Truth in Lending Act, we upheld an award of attorney's fees to a prevailing plaintiff who had been represented by two public service organizations (one of which was the Urban Law Institute). We concluded that the award was proper even though the plaintiff had "incurred no obligation to actually pay attorneys' fees," and that an award "should not be denied merely because an attorney was employed by a legal aid society." *Id.* at 1340 n. 1 (citations omitted). *See generally Blum v. Stenson*, —— U.S. ——, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). There is no reason to depart from our holding in *Frazier* merely because this litigation was based on a private cause of action rather than a consumer protection statute. We hold that the status of appellee's counsel as a member of the Urban Law Institute did not bar the trial court, in the exercise of its discretion, from awarding her attorney's fees.

■ The award of $650 for the services of the North Carolina attorney, however, must be reversed. A trial court in a domestic relations case has broad discretion to decide whether to grant a request for attorney's fees and how much the award should be. Factors which the court must consider include the nature and quality of the services performed by the attorney, the respective abilities of the parties to pay, and, in a custody proceeding, whether the fees were incurred in the best interests of the child. *Moore v. Moore, supra*, 391 A.2d at 771; *Eisenberg v. Eisenberg, supra*, 357 A.2d at 402, citing *Ritz v. Ritz, supra.* "These are considerations

which can best be fairly weighed by the trial court, and. unless a clear abuse of discretion has been shown, the award [will be] upheld." *McGehee v. Maxfield*, 256 A.2d 576, 579 (D.C.1969) (footnote omitted). In this case, however, we conclude that the trial court abused its discretion in making an award to the North Carolina attorney because that portion of appellee's request for fees was not supported by an adequate factual showing.

■ Under *Paine v. Paine, supra*, the court "may require the father to reimburse the mother for sums reasonably expended by her for counsel fees and suit money." 267 A.2d at 358. Thus, before the court may make any award at all, it must determine whether the expenditures were reasonable. The court cannot do so if it does not know what the money was spent for. In support of her request for attorney's fees, appellee submitted photocopies of two receipts and two account statements from her North Carolina attorney. The two receipts, however, simply established that the attorney had received $531 on an existing account; there is nothing to suggest that that account had anything to do with this case. The two statements, dated June 8 and July 30, 1982, requested a total of $119 for "fees for service and filing in Washington, D.C." Like the receipts, they do not reflect any connection with this case; they indicate only that something was filed somewhere "in Washington, D.C." Moreover, it is not clear whether the amounts on the two statements are separate or whether the June figure ($34.50) is included as part of the July figure ($84.50). Finally, unlike the request from the Urban Law Institute attorney, which was in the form of an affidavit, the request from the North Carolina attorney was not under oath. In sum, there was nothing before the trial court which would show the nature and quality of the services rendered by the

---

7. Appellant does not contend that the amount of this award was excessive, but only that the Ur-

ban Law Institute was ineligible to receive it.

North Carolina attorney[8] or whether payment for those services would be in the best interests of the children. *Moore v. Moore, supra.* Because "the factual record [was not] capable of supporting the determination reached by the trial court," we hold that it was an abuse of discretion for the court to award $650 in fees to appellee for the services of her North Carolina attorney. *Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979).

## IV

■ Appellant's final contention is that the court had no authority to order him to execute a wage assignment for the attorney's fees under D.C.Code §§ 16-911(a)(4)[9] and 16-916(c) (1981)[10] because, at the time the court entered its order, he was not in arrears. We hold that the trial court had the authority to do just what it did.

In its order granting appellant's motion to reduce the amount of child support, the court directed him to execute an assignment of wages to ensure payment of not only the support arrearages but also future child support, and attorney's fees as well. At the time this order was entered, appellant was not in arrears as to the attorney's fees because it was this order that first established the amount for which he would be liable. However, he was in arrears on the support payments which the court had previously ordered him to make.

Reading the two statutes together, we have no doubt that the court had the power to direct appellant to assign a portion of his wages to ensure that appellee would re-ceive future child support payments. Section 16-911(a)(4) authorizes the court to enter such an order "if a party under court order to make payments ... is in arrears," and section 16-916(d) allows a child support order to be enforced "in the same manner as is provided in section 16-911." Because appellant was already two months behind in his court-ordered support payments, the wage assignment was a permissible means of enforcing that obligation. *Cf. Trigo v. Riggs National Bank,* 338 A.2d 445, 451-452 (D.C.1975). Appellant balks, however, at including attorney's fees within the wage assignment, since he was not in arrears with respect to them. Although this is true, we think it is irrelevant.

■ Under section 16-911(a)(4), the court has the power to require a wage assignment by anyone who is in arrears on certain kinds of court-ordered payments. Section 16-916(d) permits that power to be exercised in the enforcement of orders for the payment of child support and attorney's fees. In this case the court was confronted with a father who, three months after being ordered to support his children, was two months behind in his support payments. Having already ruled that appellant must pay appellee's attorney's fees, with only the amount left to be determined, the court surely was entitled to take his child support arrearages into account in deciding how to make sure that the attorney's fees would be paid. We think the policy underlying section 16-916(d) will best be served by reading it so

---

8. At a minimum, a request for attorney's fees should give some general indication of what the attorney did, such as "trial preparation" or "witness interviews," and how much time was spent in doing it. Factual support for such a request should normally be provided either under oath or by stipulation. The showing made by the Urban Law Institute attorney was sufficient in these respects. Whether to require more detailed information is a matter for the trial court, in its discretion, to decide in the circumstances of each case.

9. D.C.Code § 16-911(a)(4) (1981) provides that "[d]uring the pendency of an action for divorce

... the court may ... if a party under court order to make payments ... is in arrears, order the party to make an assignment of part of his or her salary, wages, earnings or other income to the person entitled to receive the payments...."

10. D.C.Code § 16-916(c) (1981) allows the court to award child support and attorney's fees in a support action against either parent. Such a decree may be enforced "in the same manner as is provided in section 16-911." D.C.Code § 16-916(d) (1981).

as to vest the broadest possible discretion in the trial court. Thus we hold that when a party is in arrears on one type of court-ordered payment (in this instance child support), the court may order a wage assignment under section 16–911(a)(4) not only as to that type of payment but also as to any other type which the court may require under section 16–916 (in this instance attorney's fees). So construing the two statutes, we find no error and no abuse of discretion in the wage assignment order.

Two aspects of the court's May 23 order need clarification. The portion of that order reducing appellant's child support obligation to $200 per month stated that appellant must also pay attorney's fees "at the rate of $100 per month until discharged." Accordingly, in paragraph number 3 of the order the court directed appellant to execute an assignment of wages in the amount of "$300 per month (reduced support plus arrearages and attorney's fees); when the arrearages and attorney's fees [were] satisfied, the assignment [would] be $200 per month (reduced support only)." Appellant's employer was to forward "equal installments of $150 on the 1st and 15th of each month" to the Clerk of the Superior Court. Paragraph 2, however, required appellant "to pay $150 per month until he has caught up on all arrearages and paid the ... attorney's fees." This $150 figure appears to be a typographical error; the correct amount should be $100, which would make paragraph 2 consistent with paragraph 3. We therefore remand the case to the trial court to make the appropriate correction. The court also intimated, but did not specifically state, that the extra $100 per month should be applied first toward the child support arrearages and then toward the attorney's fees. Upon remand, the court should make clear whether that was its intention.

## V

The award of attorney's fees for the services of appellee's North Carolina attorney is reversed; in all other respects, the judgment is affirmed. The case is remanded to the trial court for clarification of paragraphs 2 and 3 of its supplemental order.

*Affirmed in part, reversed in part, and remanded.*