GALLAGHER, APPELLANT, *v.* GALLAGHER, APPELLEE.

454

(No. 376—Decided March 21, 1962.)

Mr. Arthur Wilkowski, for appellant.

Messrs. Williamson, Hoeffel & Funkhouser, for appellee.

Per Curiam. This is an appeal on questions of law from a judgment of the Common Pleas Court pursuant to a motion to modify a child custody order previously made in a divorce action. The divorce was granted on February 2, 1954, to the plaintiff mother, who was given custody of the children of the parties, and the defendant father was ordered to pay "as and for the maintenance and support of the plaintiff and the minor children the sum of $30 plus poundage every week."

On August 18, 1961, the defendant moved for a modification of the custody order by giving him exclusive custody of the children on the grounds:

"1. That the plaintiff is an unfit person.

"2. That the plaintiff placed said children in the Lutheran Orphanage at Toledo, Ohio.

"3. That the plaintiff threatens to remove said children from the Lutheran Orphanage at Toledo, Ohio."

Following a hearing, the court, by its entry of October 11, 1961, found that the plaintiff "relinquished custody of said children to the Lutheran Orphanage at Toledo, Ohio, in March, 1957, and that the plaintiff has not contributed to the care and support of said children since that date," vacated the former order of custody, and ordered:

"* * * that the care, custody and control of said children be and they are hereby awarded to the defendant, Joseph H. Gallagher, but said children are to remain in the Lutheran Orphanage at Toledo, Ohio, and under the supervision of the Department of Welfare of Henry County, Ohio, until the further order of the court; that the plaintiff, Melba R. Gallagher is entitled to rights of visitation of said children on the first and third weekends of each month and that the defendant, Joseph H. Gallagher, is entitled to rights of visitation of said children on the second and fourth weekends of each month, subject, however, to the consent of the said Lutheran Orphanage so as not to interfere with the education of said children or the rules and regulations of said orphanage. It is further ordered that the defendant pay for the care and support of said children as arranged with the Department of Welfare of Henry County, Ohio."

Plaintiff, appellant herein, assigns error in the following particulars:

"I. Defendant-appellee has failed to show that the plaintiff-appellant is an unsuitable person to have custody of minor children.

"II. The placing of minor children in a children's home by a parent who was originally awarded custody under a divorce decree does not constitute an abandonment of such children, or a relinquishment of custody where there is no showing of an intent to evade the duty of rearing the children or conduct evincing a settled purpose to forego all parental duties.

"III. A mother cannot be held to have failed to provide for the support of her minor children where there is no showing that she had the ability and refused to provide.

"IV. It is prejudicial error and an abuse of the court's discretion to modify a previous order fixing the custody of

minor children where the only change shown by the party seeking the modification and carrying the burden of proof is a change resulting directly from such party's failure to provide sufficiently for support of his minor children.

"V. The custody award of October 11, 1961, with its complete absence of any rights of parental control, is contrary to law, and against the manifest weight and sufficiency of the evidence."

As the trial court appears to have based its order specifically on the findings that the mother had relinquished custody of her children to the orphanage in March 1957, and since that date had not contributed to their care and support, we will confine our consideration of the facts of this case to those relevant and material to such findings. Except as hereafter appears, we are not therefore concerned as to factual issues pertaining to the fitness of the mother or as to whether there has intervened since the original custody order any changed conditions affecting the welfare of the children requiring a change of custody to promote the best interests of the child. *Bastian* v. *Bastian*, 81 Ohio Law Abs., 408.

At the hearing of the cause, Mrs. Gallagher testified that she placed the children in the orphanage in March of 1957; that on June 20, 1959, there was born to her a bastard child; that the defendant had not made regular payments for support in accordance with the original divorce decree; that she tried to have the proper authorities "pick him up" for nonsupport, but that they postponed any action to do so; that she worked occasionally after the divorce and supported her children with support payments she received and money provided by the welfare department; that while living in Defiance and out of work she "seen we couldn't get along and I made arrangements to put them in a home"; that at the time Mr. Gallagher was behind in his support payments; that the only paper she signed in connection with their admittance to the home was one to authorize the use of pictures of the children; that for more than two and a half years she has been trying to regain the custody of her children from the home, but was advised by a Rev. Shockhouser "that they had a large investment in those children and didn't want to give them up"; and that she has had the children with her for two weeks every summer, visits

them an average of three times a month, and sends for them with a cab when she is unable to get anybody else to pick them up for her.

A Mr. Keller testified, among other things, that he has been administrative assistant at the Lutheran home since April 1, 1959; that Mrs. Gallagher either sends a cab or a gentleman friend to pick up the children every other Sunday at 11:30 and to return them at 6:30; that there is no writing made out at the time children are admitted into the Lutheran home, which is a certified institution, except to authorize the use of pictures for publicity purposes; that when on duty he has seen Mrs. Gallagher a couple of times a month when she returns the children to the home; that he doesn't believe Joseph Gallagher has provided any clothes for the children; that although he can't say exactly what, he knows that Melba Gallagher has provided clothing or shoes; that "about a year ago" he called on her "to ascertain if she could help purchase shoes and at that time she said she couldn't because her only income was from the aid to dependent children and that fund calls for provision for herself and child only—it doesn't provide for the other four children"; that after that conversation she has provided some clothing or shoes; and that the Lutheran Home has received some $6,780 from the Clerk of Courts of Henry County for the support of the children.

Joseph Gallagher testified, among other things, that since the children have been in the orphanage he has bought them about $14 or $15 worth of clothing; that since the original decree he has paid approximately $60 to $75 a month support payments.

The director of the Henry County Department of Welfare testified that since the children had been placed in the Lutheran Home Henry County had paid about $720 per year for the support of the children.

The Clerk of Courts of Henry County testified to an account showing that since the date of the original decree some $6,421.40 was paid into his office by defendant for the support of the children.

The mother alluded in her testimony to an assignment, and the original papers in the action include an assignment, executed by her on January 20, 1958, and filed in the cause, to the Henry

County Department of Welfare of all support payments paid by Joseph Gallagher to the clerk of courts as support for the children as originally decreed.

Since the case of *Clark* v. *Bayer* (1877), 32 Ohio St., 299, the courts of Ohio have recognized that custody of a minor child might be lost to a parent or parents by relinquishment by contract, forfeiture by abandonment, or by the father's "being in a condition of total inability to afford his minor children necessary care and support." This was an action by a grandparent, having custody of infant children by agreement of their parents, for damages against one who wrongfully took the children from the custody of the grandparent.

We have been unable to find any authoritative case in Ohio, including the *Clark case, supra,* wherein a court has held a parent to be barred from the right to custody of his or her child on the ground of abandonment, except where there has been relinquishment by express agreement, oral or written, or unless the state compels the parental surrender of custody of a child because of unfavorable circumstances clearly detrimental to the welfare of the child, *e. g.*, dependency and neglect as found and determined under the Juvenile Court Act.

In 67 Corpus Juris Secundum, 660, Parent and Child, Section 12, it is stated:

"*Abandonment or failure to provide for child.* In accordance with the general rule that the competency, character, and conduct of the parties are to be considered in determining who shall have custody of the child, a parent may, under the principles of the common law, confirmed in many jurisdictions by statute, forfeit his right of custody by abandonment or failure to provide for the child if such failure is coupled with the ability to maintain and provide for it. * * *

"*Ability to support and educate.* The ability of a parent to support and educate the child is to be considered in determining custody, but is not controlling. Accordingly, custody of a child may be denied to a parent who is unable to afford it the necessary care, support, and education; but the mere poverty of the parents, if they are otherwise competent, is seldom, if ever, sufficient ground for depriving them of their natural rights to the custody of their children unless it entails particular hardships on, and neglect of, the children."

In the instant case, there is no evidence whatsoever of any agreement, written or oral, whereby the mother yielded or relinquished her *right* to custody of the children either temporarily or permanently to the Lutheran Home. There is no evidence to show that she was not legally entitled to regain their physical custody at any time that she insisted on same. The statement, attributed to a Rev. Shockhouser, "that they had a large investment in those children and didn't want to give them up" had no probative value whatsoever to show that the Lutheran Home had any legal right to retain custody. There is no evidence to show that the plaintiff has not contributed to the care and support of the children since the date when they were placed in the home. The evidence is much to the contrary. The testimony of Keller shows that she had the children with her at least two Sundays of each month and two weeks each summer; that she has provided them with shoes or clothing; that she provided the transportation between her home and the Lutheran Home; and that notwithstanding on one occasion she could not supply shoes for the children, she has since that occasion supplied shoes or clothing for them. When she was without work and lacking sufficient funds, it was through her arrangement that the children were placed in the Lutheran Home where they could receive proper care and thereafter *she* assigned all support payments for their benefit. The assignment itself is indicative of her provision for the support of the children, as the original divorce decree had ordered a weekly support payment to be made for the "maintenance and support of the plaintiff and said minor children." Her assignment operated to divest her of any interest in and to any support payments thereafter made. The mere placing of the minor children in the Lutheran Home does not in itself constitute evidence of relinquishment or abandonment of the custody of the minor children by their mother any more than would evidence that the mother had sent the children to an exclusive boarding school where she was able to visit the children twice a month and for two weeks during summer vacation.

It should likewise be kept in mind that the contending parties herein are husband and wife, that the Lutheran Home is not a party and does not make any claim to either temporary or permanent custody of the children, and that, notwithstanding

the Lutheran Home has provided many benefits to the children over and above the sums of money received by it, there has nevertheless been paid to it some $6,780 as "tuition" for these children. It does not, therefore, occupy the same position held by the actual custodian in most "abandonment" cases where the actual custodian has assumed all the obligations of support.

We find, therefore, that there was no evidence of any probative value upon which the court could find, as it did, that the mother "relinquished custody of said children to the Lutheran Orphanage * * * and that the plaintiff has not contributed to the care and support of said children since that date." The judgment of the trial court modifying custody appears to have been based entirely on these two findings of relinquishment and nonsupport and, not being supported by any evidence of probative value, was prejudicially erroneous and should be reversed.

Could we stop at this point we would probably be permitted to enter final judgment for the mother. However, there was other evidence bearing on the mother's fitness to have custody and as to changed conditions which might affect the welfare of the children and which might require a change of custody to promote their best interests. There was no specific finding in the court's judgment as to either the fitness of the mother to have custody, or as to any such change of conditions relating to the best interests and welfare of the children. It appears, however, that the trial court may have considered fitness of the mother and the best interests and welfare of the children both in limiting the mother's visitation privileges and in attempting to maintain the status quo by depriving the father of almost all custodial rights other than visitation privileges.

Considering the record in its entirety, we are therefore of the opinion, and it is our judgment, that the judgment of the trial court is against the manifest weight of the evidence, that the same should be reversed and the cause be remanded to the trial court for a rehearing of the motion to modify the custody order, and for further proceedings as provided by law.

*Judgment reversed.*

GUERNSEY, P. J., MIDDLETON, and YOUNGER, JJ., concur.