Jacqueline ALBERGOTTIE, Appellant,

v.

Henry JAMES, Appellee.

No. 82–58.

District of Columbia Court of Appeals.

Argued March 3, 1983.

Decided Nov. 23, 1983.

Diane M. Brenneman, Washington, D.C., for appellant.

Kenneth A. Vance, Washington, D.C., for appellee.

Nancy D. Polikoff, Washington, D.C., Phyllis Gelman, and Judith I. Avner, New York City, were on brief for amici curiae Women's Legal Defense Fund, Nat. Center on Women and Family Law, Inc., and NOW Legal Defense and Educ. Fund, urging reversal.

Before NEBEKER and BELSON, Associate Judges, and YEAGLEY, Associate Judge, Retired.

PER CURIAM:

Appellant mother seeks reversal of an order of the Superior Court, Family Division, which awarded custody of the parties' son to appellee father. As an initial matter appellant contends that the trial court erred in failing to decline jurisdiction of this proceeding. Alternatively, appellant contends that even if the court properly exercised jurisdiction, the court erred in considering appellee's gender and better financial situation as factors in determining which parent should have custody of the child. Finding no abuse of discretion, we affirm.

I

The parties met in 1977 while they were students at Ohio State University. In 1978 appellee graduated and moved to the District of Columbia, where he became employed. Appellant remained in Ohio, where she continued her studies. The parties continued seeing each other following appellee's move and, in early 1979, appellant discovered that she was pregnant by appellee. Although appellee apparently never disputed paternity, he declined to marry appellant, and contributed only $80 toward her support during the pregnancy.

Appellant's pregnancy forced her to withdraw from the University and to move to South Carolina, where friends and family were located. Appellant's financial circumstances were such that she found it necessary to obtain AFDC benefits (Aid to Families with Dependent Children) from the State of South Carolina. On December 29, 1979, she gave birth to the subject of this custody dispute, Hamadi Mugabe Albergottie.

Following the child's birth appellee continued to pursue his career in the District of Columbia while appellant remained in South Carolina, where she assumed the duties of the child's primary caretaker and,

for a period, continued to receive AFDC benefits. Friction that arose between appellant and the relatives with whom she stayed necessitated a number of moves within a relatively short period. Between the time of the child's birth and October 18, 1980, appellee contributed a total of $600 toward the child's support and saw the child three times.

On October 18, 1980, appellee visited appellant and the child in South Carolina and obtained appellant's permission to bring the child to the District of Columbia for what appellee represented would be a visit of several weeks. Eleven days after bringing the child into the District appellee initiated a custody proceeding in the Superior Court. Appellant thereafter filed a single motion in which she sought both a temporary restraining order and a preliminary injunction ordering, *inter alia,* the child's immediate return. The application for a temporary restraining order was brought before the Judge in Chambers on the day it was filed, February 2, 1981. Following a hearing, the judge denied the temporary restraining order so as to preserve the District of Columbia's jurisdiction over the custody proceeding until a hearing on the merits could be held.[1] Appellant did not pursue a further hearing in Superior Court on the motion for preliminary injunction. She thus was not in a position to seek appellate review of the denial of injunctive relief.

On April 23, 1981, a hearing was held on appellant's motion for custody pendente lite. That motion was denied, without prejudice, on the ground of insufficient evidence.

A trial on the merits took place in November 1981. The trial court rejected appellant's contention that the exercise of jurisdiction should be declined because appellee, by using deception to procure the child's presence in the District, came to the court with unclean hands. The court concluded that the unclean hands doctrine was inap-

plicable in this case for several reasons. First, the court noted that what occurred here was not a typical instance of what is sometimes termed "child-snatching" in that appellee had not violated the terms of a custody decree in removing the child from South Carolina. The court observed that, in the absence of such an order, each parent technically had an equal right to custody. Second, the court noted that appellee had acted out of concern for what he considered the child's best interests when he became concerned that appellant was not providing a suitable environment for the child. Third, the court noted that the child did not have well established connections with South Carolina, where mother and child had moved in and out of a number of crowded and compromising living arrangements.

Having rejected appellant's invitation to decline to exercise jurisdiction, the court then determined that the child's best interests dictated that appellee should retain custody. Relative to that point, the trial judge had already observed that appellant had treated the child neglectfully, even according to her own relatives, and that the child had been, in appellant's words, "bounced from pillar to post," and forced to sleep on the floor. He had also cited appellant's statement that the child was her only economic leverage. He went on to find the appellant mother more dependent and less mature than appellee father.

The court then noted that, in contrast to appellant, who had been at times a welfare recipient, appellee was well educated, well employed, and able to provide a good male role model for the child. The court observed that appellee had provided good care for his child while employed, and concluded that he was the more suitable custodian. Finally, the court explained that notwithstanding the troubling circumstances under which the child had come to be within the District, by the time of trial the child had lived here most of his life, a fact that

---

1. Even though the signed order indicates that the judge denied the motion for both temporary restraining order and preliminary injunction, the transcript establishes that the Judge in Chambers entertained and denied only the motion for temporary restraining order.

"provide[d] a bootstrap argument for continued maintenance of the status quo," since another abrupt change in the child's living situation would be likely to do more harm than good.

This appeal followed.

## II

Appellant's first contention is that the trial court abused its discretion in failing to decline to exercise jurisdiction because the child's presence in the District of Columbia was the product of "child snatching." Appellant argues that under the doctrine of unclean hands, courts of equity have traditionally exercised their discretion to deny relief to parties who have acted in bad faith. Appellant maintains that the trial court should have applied that equitable doctrine to his case. In addition, appellant stresses that the court's exercise of jurisdiction offended the policies embodied in the federal Parental Kidnapping Prevention Act (PKPA)[2] and the Uniform Child Custody Jurisdiction Act (UCCJA).[3] Those statutes are designed to deter child snatching by, *inter alia,* substantially limiting the power of courts to legitimize the de facto custody possession by parents who take children across state lines in order to obtain an initial custody determination or to seek a modification of an existing decree that was rendered in another state.

At the time of the proceedings below the District of Columbia was among a handful of jurisdictions that had not adopted the UCCJA and where, therefore, a child's physical presence was sufficient to warrant the exercise of jurisdiction by our courts. *See, e.g., Rzeszotarski v. Rzeszotarski,* 296 A.2d 431, 438 (D.C.1972); *In re West,* 245 A.2d 636, 637 (D.C.1968). During the pendency of this appeal, however, the District adopted the uniform act.[4] Under the UCCJA the child's presence within the District, standing alone, would be an insufficient basis for the exercise of jurisdiction by our courts. Indeed, had the UCCJA been in effect when these proceedings commenced, its provision would clearly have made South Carolina, not the District, the appropriate forum for resolution of the custody dispute.

■ In our view the District's post-trial adoption of the UCCJA should not affect the outcome of this appeal. Appellant has not urged that we should give the statute retroactive application, and we cannot say that the trial court's failure to apply the statute's policies and provisions in advance of legislative adoption constituted an abuse of discretion. That being the case, the question that confronts us is quite narrow: whether the trial court, under then-existing District of Columbia law, abused its discretion in refusing to decline to exercise jurisdiction under the doctrine of unclean hands. For the reasons stated below, we conclude that on the facts of this case no such abuse occurred.

The procedural background of this case deserves emphasis, since it is crucial to our conclusion regarding the trial court's decision to exercise jurisdiction. Relatively early in these proceedings appellant moved for a temporary restraining order and preliminary injunction ordering the child's immediate return to appellant. As noted above, the Judge in Chambers denied the requested injunctive relief in order to preserve the District's jurisdiction by assuring the child's continued physical presence in the District until a trial on the merits could take place. The judge, although offended by the trickery utilized in procuring the child's presence here, believed himself to be obliged to deny the motion, despite the ap-

---

2. Pub.L. No. 96–611, §§ 6–10, 94 Stat. 3568 (1980) (codified at 18 U.S.C. § 1073 note 28 U.S.C. § 1738A, and scattered sections of 42 U.S.C.).

3. 9 U.L.A. 116 (1979).

4. District of Columbia Adoption of Uniform Child Custody Jurisdiction and Marital or Parent and Child Long-Arm Jurisdiction Amendments Act of 1982, D.C.Law 4–200, 30 D.C.Reg. 1340 (1983) (codified at D.C.Code §§ 16–4501 *et seq.,* 13–336 and 13–423) (1983 Supp.).

pearance that appellee had unclean hands, because: 1) in the absence of an existing custody decree, each parent had an equal legal right to custody; and 2) the requested relief would not maintain the current status quo, but rather would return matters to the status that had existed several months earlier, before the child was taken from South Carolina.

The grant or denial of injunctive relief is discretionary with the trial court and will be reversed on appeal only when that discretion has been abused. *See, e.g., McCallum v. McCallum,* 256 A.2d 911, 912 (D.C.1969). Despite this deferential standard of review, reversal is appropriate when a court fails to recognize its capacity to exercise discretion. *See Johnson v. United States,* 398 A.2d 354, 367 (D.C.1979). In the case at hand the Judge in Chambers appeared to believe that, because appellee legally had an equal right to custody and had not violated the terms of an existing custody decree in removing the child from South Carolina, the court could not, through the exercise of its inherent equity powers, determine that appellee's conduct was so objectionable that access to District of Columbia courts should be denied. We do not deem it appropriate to reach the question whether the court's stated basis for declining to exercise discretion in this matter afforded grounds for reversal. We take

that view because appellant not only failed to pursue the matter further by seeking a preliminary injunction and, if unsuccessful, appellate review of the trial court's ruling, but also, through counsel's statements during the hearing on the motion, actually appeared to waive any objections to the District of Columbia's jurisdiction.[5]

We regard appellant's failure to pursue her motion for preliminary injunction and, if unsuccessful, to seek prompt appellate review of its denial as fatal to appellant's jurisdictional arguments.[6] Because of this omission appellee continued to have custody of the child until the trial on the merits commenced in November 1981, over a year after the child had been brought into the District. Thus, the trial court confronted a very different factual situation when considering the merits, since by the time of trial the child had spent most of his life here and the status quo was that the child was with appellee.

Because of the procedural background of this case, therefore, we conclude that at the time the hearing on the merits commenced, the court did not abuse its discretion in refusing to decline to exercise jurisdiction.[7] Given the objectionable nature of appellee's conduct we reach this conclusion with reluctance. This opinion should not be read as condoning such behavior. Application of the District's recent-

---

5. During the hearing the motions court observed that if the requested relief were granted (*i.e.,* if the child were allowed to return to his mother in South Carolina) the District would lose jurisdiction over appellee's custody action. Counsel for appellant responded that: "[o]ur client would be fully willing to bring the child back within the jurisdiction. We're in a situation where [the] mother needs to be with the child." [Tr. of Feb. 2, 1981 at 12.] Further, counsel stated that "we're not interested in defeating the jurisdiction of this Court, we are fully prepared to adjudicate this matter within this jurisdiction." *Id.* at 13.

6. After denial of the motion for a temporary restraining order, appellant's counsel did not bring the matter back before the court for consideration of the motion for preliminary injunction.

7. We also reject appellant's contention that the necessity of defending a custody proceeding in this jurisdiction deprived her of her right to due process of law. The record demonstrates that appellant failed to raise timely objections to jurisdiction, that she explicitly acknowledged, through counsel, her willingness to litigate the matter in the District of Columbia, *see supra* note 5, and that she had an adequate opportunity to present evidence. Moreover, the trial court's refusal to admit into evidence three depositions that had been taken by appellant's counsel in South Carolina without complying with D.C.Super.Ct.Dom.Rel.R. 28–I(a) did not deprive appellant of due process. The court's ruling did not deprive appellant of the right to present evidence; rather, it was counsel's acknowledged failure to follow R. 28–I, *see* Rec. at 154, that foreclosed use of the depositions at trial.

ly adopted UCCJA, which provides clear guidance on when our trial court should determine, in the exercise of its discretion, to decline to exercise jurisdiction, should deter such conduct in the future. If applied with an eye toward its underlying purpose, the new law will generally deny access to our courts to a parent or another engaged in wrongful or reprehensible conduct in order to secure de facto custody of a child.[8]

■ Having concluded that the trial court did not commit reversible error in exercising jurisdiction, we turn to appellant's second contention: that the trial court erred in considering appellee's gender and superior financial situation in determining which parent should have custody. As we have often noted, the child's best interest is the paramount consideration in any custody proceeding, and the determination of the trial court, which had the opportunity to observe demeanor and assess credibility, will be set aside only for abuse of discretion. See, e.g., McCallum, supra, 256 A.2d at 912; Crain v. Crain, 209 A.2d 257, 259 (D.C.1965). We are satisfied that in the case at hand no abuse of discretion occurred.

■ Although the trial court considered appellee's ability to provide the child with a "good male role model" as one factor in awarding custody, we see nothing in the record to support appellant's assertion that the court regarded the male parent as presumptively being the better custodian for a male child. Rather, the court appears to have considered appellee's ability to serve as a role model as merely one consideration in determining whether, in the totality of the circumstances, placement of the child with appellant, whose performance as a parent had had numerous shortcomings which the court had noted, would serve the child's best interests.[9] We cannot say that in this regard the trial court abused its discretion.

We are similarly unpersuaded by appellant's contention that the court erred in basing its custody decision in part on the parties' comparative financial positions. Specifically, appellant argues that the trial court improperly considered appellant's status as a former welfare recipient in determining that appellee, who was well employed and had no prospect of needing to seek public assistance, could offer the child a better living environment. Appellant contends that reference to such economic considerations amounted to impermissible discrimination on the basis of wealth and, because women are statistically more likely than men to receive public assistance, sex discrimination.

■ We conclude that the court's consideration of the parties' relative financial capabilities—as those capabilities affected their respective capacities to provide a stable living environment for the child—did not constitute an abuse of discretion.[10] We would strongly reject any suggestion that there exists in custody matters a pre-

8. We reject appellee's contention that the UCCJA would be inapplicable to cases in which, as here, a parent removed a child in order to obtain an initial custody determination and hence did not violate the terms of an existing decree. The Act states that courts may decline to exercise jurisdiction when the party seeking an initial custody decree "has wrongfully taken the child from another state or has engaged in similar reprehensible conduct." UCCJA § 8(a), 9 U.L.A. 142 (1979). The Commissioners' Note to this provision states:

> Subsection (a) extends the clean hands principle to cases in which a custody decree has not been rendered in any state.... "Wrongfully" taking under this subsection does not mean that a "right" has been violated—both

husband and wife as a rule have a right to custody until a court determination is made—but that one party's conduct is so objectionable that a court in the exercise of its inherent equity powers cannot in good conscience permit that party access to its jurisdiction.

Id. at 142–43; accord Williams v. Zacher, 35 Or.App. 129, 132–33, 581 P.2d 91, 93–94 (1978).

9. See Bazemore v. Davis, 394 A.2d 1377 (D.C. 1978) (en banc).

10. We find completely unpersuasive appellant's conclusory assertions that any reference to economic criteria in custody matters violates the equal protection clause.

sumption that favors the wealthier parent or disfavors a parent who had received public assistance in custody matters.[11] Yet, we are of the view that where, as here, one parent's past and potential financial posture raises questions concerning that parent's ability to provide a stable home for the child, *cf., e.g., In re Wesley J.K.,* 299 Pa.Super. 504, 511, 445 A.2d 1243, 1245 (1982); *Gallagher, supra,* note 11, 115 Ohio App. at 458, 185 N.E.2d at 574, economic criteria are not irrelevant to the best interests inquiry. We are aware, as the trial judge undoubtedly was also, that ordinarily a mother can improve her financial situation in circumstances such as those present here by seeking court-ordered support payments for her child. Appellant, however, failed to do so.

Since we are satisfied that the trial court regarded financial ability as but one of several factors in attempting to arrive at a custody determination that served the child's best interests, we conclude that no abuse of discretion occurred in this case. The order of the trial court awarding appellee custody of the child is hereby

*Affirmed.*

---

11. *See Bazemore v. Davis, supra* note 9, 394 A.2d at 1390 n. 12 (Gallagher, J., with Nebeker & Harris, JJ., dissenting in part and concurring in result); *cf. Gallagher v. Gallagher,* 115 Ohio App. 453, 458, 185 N.E.2d 571, 574 (1962) (ability of parent to support and educate child a consideration, but not controlling, under applicable statute).