617 A.2d 199 (1992)
In re E.Q.B.
American Friends of Children, Inc., Appellant.
Nos. 90-FM-1461, 90-FM-1462 and 90-FM-1463.
District of Columbia Court of Appeals.
Argued April 7, 1992.
Decided December 28, 1992.
*200 Jon E. Shields, with whom Brien A. Roche, McLean, VA, was on the brief, for appellant.
Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, were on the brief, for appellee.
Before ROGERS, Chief Judge, SULLIVAN, Associate Judge, and PRYOR, Senior Judge.
SULLIVAN, Associate Judge:
Appellant, American Friends of Children, Inc. ("AFC"), a private adoption agency doing business in the District of Columbia, appeals from an order of the trial court awarding costs to appellee, the State of Florida Department of Health and Rehabilitative Services ("DHRS"), pursuant to D.C.Code § 16-4515(d) (1989). AFC also challenges two orders of the trial court that allowed DHRS to file supplemental pleadings related to its motion for costs. AFC argues that the court abused its discretion by awarding costs and by allowing DHRS to file the supplemental pleadings. We affirm and issue this opinion since we have not previously addressed the issue of an award of costs pursuant to this statute.

I.
The relevant facts are undisputed. On November 3, 1989, Florida officials commenced a dependency action, the equivalent of a neglect proceeding, alleging that E.Q.B., a Florida resident born on March 10, 1989, had been physically abused by his father, R.B. ("the father"). They also alleged that E.Q.B.'s mother, D.R. ("the mother"), had failed to protect her infant son. On December 6, 1989, the Juvenile Division of the Circuit Court of Bradford County, Florida, entered a disposition order which found E.Q.B. to be a dependent child and placed him in the custody of the mother under the supervision of DHRS.
On September 10, 1990, DHRS officials learned that the mother had made arrangements to fly to Washington, D.C. with E.Q.B. to finalize E.Q.B.'s adoption by a couple who resided in Washington. Having confirmed that the mother and E.Q.B. had departed the Gainesville, Florida airport on a flight to Washington National Airport, DHRS obtained an emergency order from the Bradford County Court to take E.Q.B. into custody and to turn him over to DHRS pending further court proceedings. At the request of Florida officials, officers of the Metropolitan Washington Airport Police detained the mother and E.Q.B. upon their arrival at Washington National Airport.
The airport police received a faxed copy of the September 10, 1990 Florida custody order which they served on the mother, on a social worker from the Department of Human Services in Arlington, Virginia, and on two employees of AFC who were at the airport to meet the mother and E.Q.B. for the express purpose of receiving custody of E.Q.B. and placing him for adoption. At the airport, the Virginia social worker took E.Q.B. into custody, but then relinquished his custody to AFC based on AFC's employees' oral and written representations that AFC would place E.Q.B. in an approved foster home and would cooperate with the Florida authorities. On September 11, 1990, however, AFC, through its employees, informed DHRS that AFC had returned E.Q.B. to his mother.
*201 On September 13, 1990, the Bradford County Court granted the request of E.Q.B.'s father and issued an order changing custody of E.Q.B. from the mother to DHRS. The next day, DHRS, assisted by the District of Columbia Office of the Corporation Counsel, filed a "Petition for Recognition and Enforcement of the State of Florida's Custody Order Concerning E.Q.B." That petition was filed pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA), D.C.Code § 16-4501 et seq. (1989) and alleged, inter alia, that AFC either had placed E.Q.B. in a foster home or had custody of E.Q.B. in violation of the two Florida custody orders. DHRS also filed a "Petition for Writ of Habeas Corpus," pursuant to D.C.Code § 16-1908 (1989), wherein it basically made the same allegations and sought custody of E.Q.B.

II.
After an evidentiary hearing, Judge Zinora Mitchell-Rankin entered orders enforcing the two Florida custody orders and granting the "Petition for Writ of Habeas Corpus." The judge also directed AFC to relinquish custody of E.Q.B. to DHRS. Alternatively, if AFC did not have custody of E.Q.B., Judge Mitchell-Rankin directed AFC to provide any and all information to DHRS regarding the whereabouts of E.Q.B.[1] On September 14, 1990, the mother relinquished custody of E.Q.B. to officials of the District of Columbia Department of Human Resources.
In her order granting the "Petition for Recognition and Enforcement of the State of Florida's Custody Order Concerning E.Q.B.," Judge Mitchell-Rankin reserved ruling on the request of DHRS for sanctions, i.e., filing fees, travel expenses, and related costs allegedly incurred by DHRS in its effort to seek enforcement of the Florida custody orders. The judge also granted AFC's attorney leave to file any pleadings on the issue of sanctions and expenses.

III.
Thereafter, Judge Mildred Edwards issued three orders that are the subject of this appeal.[2] One order directed AFC to pay $1,837.32 to DHRS for filing fees, travel expenses, and other related costs of DHRS and its witness in enforcing the Florida custody orders in the District of Columbia. Another order denied AFC's "Motion to Strike the Response to Opposition to Petitioner's Prayer for Filing Fees, Travel Expenses, and Other Related Costs" and ordered that the "Response to Opposition to Petitioner's Prayer for Filing Fees, Travel Expenses, and Other Related Costs" may be filed. The final order allowed the filing of DHRS's "Response to Opposition to Petitioner's Prayer for Filing Fees, Travel Expenses, and Other Related Costs."
With regard to AFC's challenge of the two orders allowing the filing of pleadings by DHRS, we conclude that AFC's arguments that the filings were untimely and impermissibly introduced new facts and evidence are unpersuasive. The trial judge can hardly be criticized for allowing the filing of pleadings that would enable her to fully consider the merits of the issues before *202 her when AFC has shown no prejudice.
We also find unpersuasive AFC's argument that an award of costs pursuant to D.C.Code § 16-4515(d) was inappropriate.[3] Courts have interpreted substantially similar statutes patterned after the UCCJA to authorize judges to use their discretion to award costs to prevailing litigants in appropriate cases. See Pitts v. Sutter, 408 So.2d 105 (Ala.Civ.App.1981); Kimmons v. Heldt, 667 P.2d 1245 (Alaska 1983); Benson v. Benson, 5 Conn.App. 95, 497 A.2d 64 (1985); Harvey v. Harvey, 244 Ga. 199, 259 S.E.2d 456 (1979); Hust v. Whitehead, 416 So.2d 639 (La.1982); Heyer v. Bayless, 119 Misc.2d 413, 463 N.Y.S.2d 159 (Co.Ct.1983); Brewington v. Serrato, 77 N.C.App. 726, 336 S.E.2d 444 (1985).[4] We do likewise and, accordingly, find no abuse of discretion by Judge Edwards.[5]See Johnson v. United States, 398 A.2d 354, 362 (D.C. 1979) (matters committed to the discretion of the trial court are reviewed only for abuse of that discretion).
In awarding costs to DHRS, Judge Edwards considered DHRS's motion for filing fees and travel expenses and the opposition filed by AFC. The judge recognized that Judge Mitchell-Rankin had found that AFC knew of the outstanding order of custody when its representatives signed a statement representing that E.Q.B. would be placed in a foster home approved by AFC notwithstanding the Florida court's directive to forthwith deliver the child to DHRS. The judge also was aware of AFC's violations of that order when AFC returned the child to its mother on September 11, 1990, rather than surrender the child to the Florida officials.[6] Therefore, in view of AFC's violations of the order of custody, we hold that Judge Edwards had appropriate grounds to order that AFC pay costs.[7]
The attorney's affidavit accompanying DHRS's motion itemized costs totaling $1,837.32.[8] That sum represented roundtrip airfare, lodging and meals for two days, and other miscellaneous costs for its attorney and E.Q.B.'s father, who was also a potential witness. DHRS waived its claim for attorney's fees. In view of the emergent nature of the proceeding and the uncertainty of DHRS as to whether testimony from the natural father would be required in the District of Columbia,[9] we *203 are satisfied that Judge Edwards could properly conclude that the expenditures made by DHRS for transporting and lodging the father and the attorney were reasonable. See Benson, supra, 497 A.2d at 66; Hust, supra, 416 So.2d at 640-41; Harvey, supra, 259 S.E.2d at 456; Heyer, supra, 463 N.Y.S.2d at 161; see also Robinson v. Howard Univ., 455 A.2d 1363 (D.C.1983).
The judgments below are accordingly
Affirmed.
NOTES
[1] Although not a party to the Florida proceeding, AFC, nonetheless, had notice of the Florida orders and admittedly acted in concert with E.Q.B.'s mother, an enjoined party. Therefore, the Superior Court could properly enjoin AFC to return E.Q.B. or to assist the District and Florida authorities in obtaining actual custody of E.Q.B. See Golden State Bottling Co. v. NLRB, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); State of Ill. v. United States Dep't of Health, 772 F.2d 329 (7th Cir.1985); Thompson v. Freeman, 648 F.2d 1144 (8th Cir.1981); United States v. Hall, 472 F.2d 261 (5th Cir.1972).
[2] AFC also attempts to challenge the jurisdiction of the Superior Court of the District of Columbia to enforce the Florida custody orders. AFC, however, did not note an appeal from those orders entered by Judge Mitchell-Rankin which addressed the merits of the litigation between the parties. Because a request for an award of fees and costs is entirely separate from a merits determination and is adjudicated independently of an underlying cause of action, challenges to Judge Mitchell-Rankin's orders are not properly before this court. See e.g., Buchanan v. Stanships, Inc., 485 U.S. 265, 267, 108 S.Ct. 1130, 1131, 99 L.Ed.2d 289 (1988); White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451-52, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982).
[3] D.C.Code § 16-4515(d) provides as follows:

A person violating a custody decree of another state which makes it necessary to enforce the decree in the District may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his or her witnesses (emphasis added).
Super.Ct.Civ.R. 54(d) states that "[e]xcept when express provision therefor is made either in an applicable statute or in these Rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs...." (emphasis added). Id. § 16-4515(d) expressly provides that a court may award costs of litigation to a party entitled to custody against a person who violates a custody decree. We hold that D.C.Code § 16-4515(d) is an "applicable statute."
[4] Alabama, Alaska, Florida, Georgia, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Mississippi, Nebraska, North Carolina, New York, North Carolina, and the District of Columbia have adopted substantially similar versions of the UCCJA § 15, 9 U.L.A. 311-312 (1988).
[5] We see no reason why the criteria evaluated in determining whether an award of costs is appropriate pursuant to Super.Ct.Civ.R. 54(d) should not also be evaluated in determining whether a party is entitled to a discretionary award of costs pursuant to D.C.Code § 16-4515(d). See In re Antioch Univ., 482 A.2d 133 (D.C.1984); Robinson v. Howard Univ., 455 A.2d 1363 (D.C. 1983).
[6] AFC argues on appeal that when it returned the child to his mother on September 11, 1991, it did so because it had no authority to hold the child against the mother's wishes. The Florida order of custody, however, unequivocally provided AFC with a legal alternative for E.Q.B.'s custody.
[7] Although it would have been preferable for Judge Edwards to have clearly articulated the basis for her ruling, implicit in her award of costs is her finding that AFC violated the Florida order of custody. A reasonable review of the pleadings considered by Judge Edwards supports her ruling.
[8] The affidavit contained an addition error; the correct amount is $1,817.32.
[9] The father had been a fact witness in the Florida proceedings that culminated with the entry of the order dated September 13, 1990.