**Daniel I. BLISS, Appellant,**

v.

**Elena T. BLISS, Appellee.**

**Nos. 97–FM–701, 97–FM–1019.**

District of Columbia Court of Appeals.

Argued Nov. 24, 1998.

Decided July 22, 1999.

Alan B. Soschin, Washington, DC, for appellant.

Mary S. Pence, with whom Pamela B. Forbes, Washington, DC, and Garrett L. Lee, Boston, MA, were on the brief, for appellee.

\* Sitting by designation pursuant to D.C.Code

Before FARRELL and RUIZ, Associate Judges, and RETCHIN,\* Associate Judge of the Superior Court of the District of Columbia.

RUIZ, Associate Judge.

Daniel Bliss appeals from a judgment enforcing a Russian custody order, awarding sole custody of the parties' son, Nikita, to the mother, Elena Bliss. Appellant argues that the trial court erred in its determination that he had been afforded procedural due process in the Russian court. In addition, appellant contests the trial court's subsequent order awarding attorney's fees to Ms. Bliss under D.C.Code § 16–4515(d) (1997), asserting that he could not have violated the Russian custody order until the trial court had determined that the Russian order was valid. We affirm.

## I.

Elena Trush Bliss, a citizen of Russia, married Daniel Bliss, a United States citizen, in February 1995. The couple resided in Moscow where Mr. Bliss worked. Elena Bliss gave birth to a son, Nikita, later in 1995 during a four-month stay with Mr. Bliss's mother in the District of Columbia. Shortly after the couple's return to Russia, they began to have marital difficulties. During one argument, Mr. Bliss allegedly struck his wife. Thereafter, however, things seemed to improve until, without warning, on October 5, 1996, Mr. Bliss brought Nikita back to the United States with him while his wife was out of the house.

Although Mr. Bliss had also taken Ms. Bliss's passport with him when he removed their son to the United States, Ms. Bliss managed to travel to the District of Columbia in short order and filed a custodial action in Superior Court. This suit was dismissed on November 7, 1996 after the court determined that the District lacked

§ 11–707(a) (1995).

jurisdiction under the Uniform Child Custody Jurisdiction Act, D.C.Code §§ 16–4501 et seq. (1997).[1]

*The Russian custodial proceeding and order.*

Upon her return to Russia, Ms. Bliss began custodial proceedings there. Mr. Bliss first received notice of her petition in late November 1996, when she telephoned him, followed by personal service on him at his residence on November 26, 1996. The summons instructed Mr. Bliss to return to Russia on December 5 for a court hearing. Mr. Bliss then began to look for Russian counsel and sent the Russian court a fax on December 2, 1996, requesting a delay in the case so that he could present his objections and documentation to the court.

On December 5, Mr. Bliss received a second summons from the court, notifying him that the hearing had been rescheduled for December 14. However, Mr. Bliss did not sign acknowledging receipt of the documents as requested because the summons was not legible. The next day, Mr. Bliss was served again with a better copy of the summons, but was not asked to sign anything. Mr. Bliss sent the court another fax on December 12, again asking for more time to organize his trip and prepare documents. On December 14, Mr. Bliss's Russian counsel represented to the court that they did not have proper papers and asked for additional time to prepare for the case. The case was again continued until December 30. The case was postponed on December 30 for the last time to January 20

because a representative from the government agency concerned with the rights of children was not present.

On or about December 14, Mr. Bliss began to call social organizations and child adoption agencies to arrange a home study. He also contacted the Russian court for a third time on December 16 to ask the court for an official invitation to participate in the hearing so that he could obtain a visa from the Russian consulate. Mr. Bliss believed that the official invitation was necessary because during the five years that he worked in Russia, each time he had returned he had needed to get an invitation from a Russian organization before he could be issued a visa. As a result of his experiences, Mr. Bliss did not believe that the court summons would be sufficient for him to obtain a visa.[2] However, when questioned, Mr. Bliss conceded that he did not attempt to go to the Russian consulate to confirm that he would indeed need an official invitation, even after his wife had informed him that she had spoken to a consulate official and had been assured that the court summons would be sufficient for him to get a visa.[3]

Although Mr. Bliss never secured a visa, he continued to remain in telephone contact with his Russian counsel up until the January 20 hearing. Mr. Bliss testified that had he been able to come to Russia, he "would have worked with my lawyers, I would have helped them secure and choose witnesses, I would have helped with the cross examination" and would have testi-

1. According to Ms. Bliss's complaint, she filed under D.C.Code § 16–4503(a)(3) which authorizes the Superior Court to "exercise its jurisdiction to make a child custody determination" in cases where the child is physically present in the District of Columbia and either has been abandoned or is facing an emergency due to actual or threatened mistreatment, abuse or neglect.

2. Mr. Bliss also testified that he had informed his Russian counsel about his request to the Russian court for an invitation but that they never told him that he should go to the consulate to try to get a visa with the summons alone. On cross-examination, Mr. Bliss also

stated that his counsel had petitioned on his behalf to get him a letter of invitation, but there was nothing submitted to the trial court evidencing any of these attempts. In addition, a letter from the Ministry of Foreign Affairs of the Russian Federation dated January 1997 stated that "Bliss did not apply for a visa in Washington and his references to any difficulties occurring with obtaining it are not true."

3. According to Ms. Bliss, Mr. Bliss told her that he did not have enough money to come to Russia for the hearing.

fied on his own behalf. However, Mr. Bliss did not explore any other alternatives to participating in the proceedings, such as tele- or video conferencing.

At the hearing in Moscow on January 20 and 21, Mr. Bliss's attorneys cross-examined Ms. Bliss's witnesses as well as Ms. Bliss herself, but presented no witnesses on Mr. Bliss's behalf. In its order dated January 21, 1997 granting Ms. Bliss legal custody of Nikita, the Babushkin Inter–Municipal District Court determined Mr. Bliss's demands for an official invitation via official agencies to be merely a pretext for delaying the hearing. It also concluded that Mr. Bliss had been given a "real opportunity to participate in the court proceedings" as he had had adequate notice of the time and location of the proceedings.

In granting custody to Ms. Bliss, the Babushkin court stated that it based its decision "solely" on the interests of the child and that it would award custody to "the parent who has the greater bond with the child." [4] Among the factors cited by the court were that (1) Ms. Bliss appeared to be a caring mother and devoted most of her time to raising her son; (2) Mr. Bliss was rarely at home and spent little time raising Nikita; (3) Mr. Bliss at one point refused to have Nikita receive necessary care from Russian physicians because of his preference for U.S. specialists; and (4) Ms. Bliss had adequate living accommodations for her and her son. The court determined that to separate Nikita from

his mother at this juncture might be damaging to the boy's mental health given his strong attachment to his mother.[5] In its analysis, the court also noted Nikita's American citizenship and concluded that its decision was in accordance with District of Columbia law, "because it has rendered a decision in this dispute solely in the interests of the minor, Nikita Bliss." [6]

Mr. Bliss appealed the lower court's decision to the Civil Division of the Moscow Municipal Court contending that he had been deprived of procedural due process because he was not given a chance to present his case in person.[7] Mr. Bliss also argued that the lower court had erred in failing to require a home study of both parties' living conditions.[8] Finally, Mr. Bliss asserted that the lower court did not properly apply D.C. law, again citing the failure to allow him an opportunity to personally present his case. The Moscow Municipal appellate court affirmed the custody order on February 10, 1997, concluding that (1) there was evidence in the record that Mr. Bliss had refused summons and did not appeal to official agencies regarding the question of traveling to Russia; (2) that a home study was not necessary because a parent's living condition was not determinative of the issue of the best interests of the child; and (3) the lower court complied with District of Columbia law because it "rendered the decision solely in the interests of the child, after having properly notified the defen-

---

4. In our review we rely on the certified translations of two Russian orders contained in the record on appeal.

5. The court stated that pursuant to current Russian law, "parents have equal rights and bear equal obligations to children." The court also stated, "It is common knowledge that at this age a child more than ever needs contact with his mother with whom he is bonded by the physiology of birth and who is the sole individual who is able to meet his needs and provide care, warmth, and tenderness to the child."

6. The custody order refers specifically to D.C.Code §§ 16–4501 and 16–4523.

7. Mr. Bliss contended that the short notice deprived him of a reasonable opportunity to present his own case.

8. Mr. Bliss had argued to the lower court that Ms. Bliss's living arrangements were unsuitable for Nikita because she was living in a state dormitory and her housing arrangements were conditioned upon her employment at the dormitory.

dant of the time and place at which the case was to be heard."

*The Superior Court enforcement order.*

On February 24, 1997, after Mr. Bliss failed to comply with the Russian custody order to return physical custody of Nikita to her, Ms. Bliss filed a petition in Superior Court asking for enforcement of the Russian custody order pursuant to D.C.Code § 16–4523. After a two-day hearing on March 24 and 26, 1997 attended by both parties, the Superior Court issued a decision enforcing the Russian custody order, finding that Mr. Bliss had in fact been afforded procedural due process, and that the law and analysis applied by the Russian courts substantially accorded with District of Columbia law because both jurisdictions' statutes were rooted in the best interests of the child standard. In particular, the court noted that Mr. Bliss had conceded that he had reasonable notice, and that Mr. Bliss's failure to appear personally in Russia for the hearings "was volitionally made and not due to impossibility." [9] Finally, the court found that Mr. Bliss had made no additional effort to present his testimony in the Russian court by means other than a personal appearance, such as giving testimony via videotape or teleconference.[10]

In addition to directing Mr. Bliss to transfer physical custody of Nikita to his wife, the trial court ordered Mr. Bliss to pay all of his wife's attorney's fees and costs incurred in traveling to the District of Columbia to enforce the Russian custody decree pursuant to D.C.Code § 16–4515(d). After both parties filed submissions to the court, Mr. Bliss was directed to pay attorney's fees in the amount of $8,102 and other expenses in the amount of $1,586.60.

## II.

*Enforcement of Russian custodial decree.*

A foreign custody decree "shall [be] recognize[d] and enforce[d]" by the Superior Court of the District of Columbia provided that the decree was rendered by "appropriate authorities of other nations" and all affected parties are given reasonable notice and an opportunity to be heard. D.C.Code §§ 16–4513,[11] –4523.[12] These

9. The court found it significant that Mr. Bliss never attempted to present his court summons to the consulate to see whether that would be sufficient to obtain a travel visa, and credited Ms. Bliss's testimony that she had advised Mr. Bliss, after her conversations with a consulate official, that the summons would permit him to get a visa.

10. Mr. Bliss also argued in the trial court that the Russian court had improperly applied a tender years preference, *see, e.g. Bazemore v. Davis*, 394 A.2d 1377, 1383 (D.C.1978) (en banc); however, the trial court determined that the Russian court had considered the preference as a factor in its determination of the best interests of the child, and found no error. The court was persuaded by a recent Maryland case, *Hosain v. Malik*, 108 Md.App. 284, 671 A.2d 988 (1996), in which the Maryland Court of Special Appeals determined that a Pakistani custody order was entitled to comity even though the Pakistani court had applied a maternal preference, referred to as "Hazanit." Specifically, the *Hosain* court concluded that "[g]iven that Hazanit is only more doctrinaire in degree from the maternal preference and because the circuit court

could have reasonably found it to be only a factor, we hold that the circuit court did not err in concluding that the principles of Pakistani law which were applied were not repugnant to Maryland law." *Id.* at 1005. On appeal, Mr. Bliss does not argue that the trial court incorrectly determined that the Russian custody order was not guided exclusively by a tender years preference.

11. D.C.Code § 16–4513 provides:

The Superior Court shall recognize and enforce an initial or modification decree of a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with this chapter or which was made under factual circumstances meeting the jurisdictional standards substantially similar to those of this chapter, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those in this chapter.

12. D.C.Code § 16–4523 provides:

The provisions of this chapter relating to the recognition and enforcement of custody

provisions, as adopted from the Uniform Child Custody Jurisdiction Act (UCCJA), reflect the notion, in the child custody context, that "recognition of a foreign judgment or decree can only be based upon judicial action which comports with our own notions of due process of law." *Rzeszotarski v. Rzeszotarski,* 296 A.2d 431, 437 (D.C.1972), *overruled in part on other grounds by Bazemore, supra* note 10, 394 A.2d 1377, and *superseded on other grounds by statute as recognized by Albergottie v. James,* 470 A.2d 266, 269 (D.C. 1983); *see also Stock v. Stock,* 677 So.2d 1341, 1345 (Fla.Dist.Ct.App.1996); *Ivaldi v. Ivaldi,* 147 N.J. 190, 685 A.2d 1319, 1324 (1996); *Hovav v. Hovav,* 312 Pa.Super. 305, 458 A.2d 972, 974 (1983); *Oehl v. Oehl,* 221 Va. 618, 272 S.E.2d 441, 444 (1980). Mr. Bliss does not contest that the Babushkin Inter–Municipal district court and Moscow Municipal appellate court are "appropriate authorities" to render a custody decree and concedes that he was given adequate notice of the custody proceeding. He contends, however, that the Russian custody order should not be recognized and enforced by our courts, because he was denied an opportunity to be heard when the Russian court proceeded with the custody hearing in his absence, despite his assertions that he desired to be present.

Following a two-day evidentiary hearing, the trial court entered an order enforcing the Russian custody decree after concluding that Mr. Bliss's failure to be present at the Russian custody hearing "was volitionally made and not due to impossibility." With the trial court having made that factual determination, this court cannot set aside the judgment unless it is clearly erroneous or "without evidence to support it." D.C.Code § 17–305(a) (1997); *cf.* Super. Ct. Civ. R. 52(a). *See Vereen v. Clayborne,* 623 A.2d 1190, 1192 (D.C.1993) (D.C.Code § 17–305(a) "indistinguishable from the 'clearly erroneous' standard" of

Super. Ct. Civ. R. 52(a)); *see also Hosain,* note 11, 671 A.2d at 997.

■ We conclude that the evidence presented during the hearing was sufficient to support the trial court's finding that Mr. Bliss was given an adequate opportunity to be heard by the Russian court, but chose not to take that opportunity. *See Hovav, supra,* 458 A.2d at 974. The trial court noted that Mr. Bliss had been granted several continuances by the Russian court which gave him ample time to secure a visa. Although the initial date for the start of the proceedings was December 5, 1996, just ten days after appellant received his first court summons, the actual hearing did not take place until January 20, more than 45 days later. Mr. Bliss's representation that he was prevented from obtaining a visa because he could not get an official invitation from a Russian agency does not avail him because, as he conceded to the court, he never attempted to verify with the Russian consulate that in order to get a visa, he did indeed need an official invitation in addition to the court summons. The trial court chose to credit Ms. Bliss's testimony that she had told her husband that the court summons would be sufficient for him to get a visa. Moreover, though Mr. Bliss also testified that he and his attorneys made several requests to the court in Moscow to enlist its aid in securing the invitation he thought he needed, he did not submit any documentation to the trial court which evidenced any of these attempts. In contrast, Ms. Bliss introduced into evidence a January 1997 letter from the Ministry of Foreign Affairs of the Russian Federation stating that "[Mr.] Bliss did not apply for a visa in Washington and his references to any difficulties occurring with obtaining it are not true." Given these facts in the record, and because Mr. Bliss was represented by Russian counsel at the hearing, we cannot say

decrees of other states apply to custody decrees involving legal institutions similar in nature to custody institutions rendered

by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.

that the trial court was "clearly erroneous" in determining that Mr. Bliss had an adequate opportunity to be heard in the Russian court. *See Custody of a Minor (No. 3)*, 392 Mass.728, 468 N.E.2d 251, 255 (1984) (upholding Australian custody order in favor of husband when wife had sufficient notice of the proceeding and was represented by counsel and order was based on the best interests of the child); *Klont v. Klont*, 130 Mich.App. 138, 342 N.W.2d 549, 551 (1983) (plaintiff could not claim that he did not have reasonable opportunity to be heard in West German custody proceeding when he had prior notice and purposefully failed to attend hearing by taking child and returning to the United States); *Hovav, supra*, 458 A.2d at 974 (custody decree upheld when wife chose not to avail herself of opportunity to be heard at Israeli proceedings).

*Award of attorney's fees.*

■ In its order dated May 27, 1997, the trial court awarded Ms. Bliss attorney's fees in the amount of $8,102 and expenses in the amount of $1,586.60. Mr. Bliss does not contest the award of expenses, conceding that the court could have made an award of trial-related costs pursuant to Super. Ct. Civ. R. 54(d). However, he challenges the award of attorney's fees contending, first, that the trial court never made an explicit finding that he had violated the Russian custody order. Second, he asserts that the "District of Columbia version of the UCCJA does not provide for an award of counsel fees to the Wife merely upon her successful prosecution of such an action." He suggests that the Russian custody order could not have been given effect in the District of Columbia until the trial court

had first determined that the order was valid and entitled to comity. Therefore, Mr. Bliss asserts, because he returned Nikita to his wife in accordance with the trial court's order, he could not have violated the Russian custody order.

■ We review the trial court's decision to award costs under the UCCJA for abuse of discretion. *See In re E.Q.B.*, 617 A.2d 199, 202 (D.C.1992). Based on the record before us, we find unpersuasive Mr. Bliss's argument that the award of attorney's fees was inappropriate.

D.C.Code § 16–4515(d) provides in relevant part as follows:

A person violating a custody decree of another state which makes it necessary to enforce the decree in the District may be required to pay necessary travel and other expenses, including attorneys' fees, incurred by the party entitled to the custody or his or her witnesses.

■ By its own terms, D.C.Code § 16–4515(d) does not require an explicit finding by the trial court that a party has violated an out-of-state custody order before it can award attorney's fees and expenses. *See* D.C.Code § 16–4515(d). Moreover, although the trial judge here did not make an explicit finding that Mr. Bliss had violated the Russian custody order, there could have been no other basis for her order assessing expenses. In its disposition of the case, the court ordered Mr. Bliss to transfer custody of Nikita "in accordance with the January 21, 1997 Russian custody order granting Petitioner custody of the minor child, Nikita Bliss" and then, in the very next paragraph, awarded Ms. Bliss attorney's fees and expenses "pursuant to D.C.Code § 16–4515(d)." [13]

13. Mr. Bliss, citing testimony in the hearing transcript, argued for the first time at oral argument that the Russian custody order did not become effective until September 10, 1997, more than five months after the trial court's order enforcing the Russian decree. Considerations of fairness to the court and to the opposing party normally preclude us from considering this newly-presented issue, and

we decline to do so here. *See George Washington University v. Waas*, 648 A.2d 178, 182 n. 6 (1994) (issues raised for the first time at oral argument will not be considered on appeal); *Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967). We note, in any event, that the Babushkin court order of January 21, 1997, states that its effective date is February 10, 1997. On that

See *In re E.Q.B., supra,* 617 A.2d at 202 n. 7 ("Although it would have been preferable for [the trial court] to have clearly articulated the basis for [its] ruling, implicit in [its ruling] is [its] finding that [appellant] violated the [foreign] order of custody."); *see also Harvey v. Harvey,* 244 Ga. 199, 259 S.E.2d 456 (1979) (award of attorney's fees and costs proper after defendant's wrongful holding of custody of the child necessitated plaintiff to travel from South Carolina to Georgia to enforce custodial decree); *Heyer v. Bayless,* 119 Misc.2d 413, 463 N.Y.S.2d 159, 161 (N.Y.Co.Ct. 1983) (court's decision enforcing Utah custodial decree means that petitioner "prima facie established her entitlement to relief under the statute"). Mr. Bliss relies on *Kimmons v. Heldt,* 667 P.2d 1245 (Alaska 1983), for his contention that the trial court was required to make an explicit finding of fact that he violated the Russian custody order before his wife could be entitled to attorney's fees. However, Mr. Bliss's reliance on *Heldt* is misplaced because the trial court there had awarded attorney's fees based on three different Alaskan statutes without any accompanying findings of fact, making it impossible for the appellate court to deduce on what basis the lower court had assessed the fees. *See id.* at 1251–52. As a result, the *Heldt* court was unable to determine whether the lower court had actually concluded that the appellant had violated the sister state custody order. *See id.* at 1253. Here, the language of the trial court's order provides sufficient basis from which we can, and do, conclude that the trial court found that Mr. Bliss was in violation of the Russian court order.

We are not persuaded by Mr. Bliss's argument that the statute should be interpreted to allow attorney's fees only for a violation of a foreign custody decree occurring after a court has determined that the decree is enforceable. First, that argument ignores the fact that by failing to

return his son to his mother's custody, Mr. Bliss violated the custody decree *in Russia,* where it had been reviewed and affirmed on appeal. More generally, such a view is inconsistent with the purpose of the overall statutory scheme of the UCCJA to provide an efficient mechanism for mutual recognition and enforcement of custody decrees which meet basic standards. *See Desai v. Fore,* 711 A.2d 822, 825 (D.C. 1998). Mr. Bliss's proposed interpretation would give every parent unhappy with a foreign custody decree one initial free pass at violating it. We will not adopt an interpretation that would encourage parents who were not awarded custody of their children in an out-of-state proceeding to ignore the decree and force the custodial parent to come to their state to, in essence, relitigate the custodial issue, without regard for the potential imposition of expenses.

■ We do not intend to imply, on the other hand, that once a trial court determines that a foreign custody order is entitled to comity, D.C.Code § 16–4515(d) mandates an award of attorney's fees and other expenses to the prevailing litigant in every case. As the language of the provision indicates, the award of such costs under § 16–4515(d), as is the case under Super. Ct. Civ. R. 54(d), is within the trial court's discretion. *See* D.C.Code § 16–4515(d) ("A person violating a custody decree of another state which makes it necessary to enforce the decree in the District *may* be required to pay ....") (emphasis added); *cf. Robinson v. Howard Univ.,* 455 A.2d 1363, 1368 (D.C.1983) (award of costs under Rule 54(d) within trial court's discretion). That discretion should be exercised consistently with the statute's balanced scheme to provide for the recognition and enforcement of a foreign decree while permitting a challenge to the decree's fundamental fairness. Thus, in a

day the Moscow Municipal appellate court upheld "[t]he decision of the Babushkin Inter–Municipal District Court of the city of

Moscow dated January 21, 1997." See note 4, *supra.*

situation where a party makes a legitimate argument in good faith contesting the enforceability in our courts of a custody order rendered in another jurisdiction, the trial court should not automatically award attorney's fees and other expenses to the custodial party even if the court were to determine on the merits that the order or decree is entitled to comity. Implicit in the trial court's decision here, however, is the determination that Mr. Bliss did not make a good faith due process challenge to the Russian custody order because the trial court found that the reason he asserted as the factual basis for his claim—that the Russian court proceeded in his absence—was the result of his volitional act.

In *Heyer v. Bayless, supra,* the court in interpreting a statute similar in nature to D.C.Code § 16–4515(d) noted that the focus of the statute is

> on recompensing the custodial parent for her or his necessary expenses in regaining custody wrongfully withheld. It is remedial in nature and designed to make whole the parent wrongfully denied custody by returning that parent to the prior status as near as is possible which includes the attendant expenses and attorney's fees.

463 N.Y.S.2d at 161. The most appropriate way in this case to return Ms. Bliss to her prior status, after she has been forced to retain counsel and fly to the United States to enforce the Russian custody decree, is to compensate her for the expenses, including attorney's fees, she incurred to regain her rightful custody of Nikita. Thus, there was no abuse of discretion by the trial court in its decision to award attorney's fees to Ms. Bliss pursuant to D.C.Code § 16–4515(d). *See In re E.Q.B., supra,* 617 A.2d at 202; *see also Pitts v. Sutter,* 408 So.2d 105, 113 (Ala.Civ. App.1981); *Brewington v. Serrato,* 77 N.C.App. 726, 336 S.E.2d 444, 448 (1985).

For the foregoing reasons, we affirm the judgment of the trial court enforcing the Russian court decree and awarding expenses, including attorney's fees, to Ms. Bliss.

*Affirmed.*