**Karl H. FRITZ, Appellant,**

v.

**Jennifer L. GRISE, Appellee.**

**No. 99–FM–1582.**

District of Columbia Court of Appeals.

Argued April 2, 2002.
Decided May 2, 2002.

---

Pamela B. Stuart, Washington, DC, with whom Kathleen E. Voelker was on the brief, for appellant.

Dorrance D. Dickens for appellee.

Before TERRY, FARRELL, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Appellant Fritz, having prevailed against the complaint of his former spouse (appellee Grise) seeking to modify a child custody order, appeals from the refusal of the trial court to award him attorney's fees. Fritz argues primarily that the trial court's denial of the motion to modify custody effectively granted a counterclaim Fritz had filed, thus entitling him to attorney's fees under a provision of the parties' separation and property settlement agreement. That paragraph called for an award of fees to a party who successfully "brings an action to enforce or implement" the terms of the agreement. Because, on this record, Fritz's counterclaim obtained no relief beyond the denial of Grise's complaint to change the custody disposition, we hold that it did not come within the fee-shift provision of the agreement. As Fritz also has shown no abuse of discretion in the court's refusal to award him fees under the common law or a related statute, we affirm.

## I.

At the relevant times, Fritz and Grise were both employed by the United States Foreign Service. They were married in 1983 and subsequently had two children. In 1994, they entered into a separation and property settlement agreement (the Agreement), which, as relevant here, gave legal custody of the children to Fritz subject to joint parental decision-making on all significant issues, including education. The children were to reside with Fritz during the school year, but, in view of his expected postings abroad, the Agreement further provided that if adequate local schooling was not available where he resided, the children would live with Grise for that school year so long as adequate schooling was available at her place of residence. Grise, in any event, was to be accorded sixty-five days of visitation during the summer school break and an additional fourteen consecutive days during the school year; and the parties could agree mutually on additional temporary custody with Grise. As part of a final divorce entered in Virginia, the Agreement was "affirmed, ratified, and incorporated" but not merged, all in conformity with Virginia law.

Starting in 1994, Grise took up residence in the District of Columbia, where she remarried. The children lived with Fritz while he was stationed in Ghana and Vancouver, Canada, but beginning in July 1997 they lived with Grise in the District by agreement of the parties. At some point no later than September of 1998, Fritz told Grise that he was being reassigned to Indonesia and would be enrolling the children in school there. In June 1999, Grise filed in Superior Court a Complaint to Enroll and Modify Custody Order in which she asserted "that it would be in the children's best interest for them to continue to have their primary physical residence with her," where they had lived since the summer of 1997, attended school, made friends, and developed a close relationship with her current husband. Grise also sought a Writ of Ne Exeat to prevent Fritz from removing the children from the District until her complaint was resolved. Fritz answered the complaint by asserting, as an affirmative defense, that there had been no change in circumstances unforeseen at the time the parties entered into the separation agreement. He also filed a counterclaim which, besides repeating that there had been no change of circumstances justifying alteration of the custody agreement, asserted that Grise had "sought to interfere with Mr. Fritz's exercise of legal custody of the children by seeking to interfere with his plans for [them] to travel with and reside with him at his new For-

eign Service post and ... to prevent fulfillment of his duty ... to enroll [them] in suitable schooling." Fritz sought to enjoin Grise from such interference.

At the evidentiary hearing on July 14, 1999, Fritz testified that school for the children was scheduled to begin in Indonesia on August 18. He acknowledged that under the Agreement "summertime was time that the children were ... entitled to be ... in the care of their mother," and that "as long as the children arrived in Jakarta a week before school was due to begin," it did not matter whether they travelled there in his custody or the mother's.[1] Although Fritz had not "heard a response to this day" to the choice he had given Grise of herself bringing the children to Jakarta or letting them travel with him, and had postponed his flight reservations upon learning of her suit to modify, he gave no testimony supporting the implied assertion in the counterclaim that Grise had violated the Agreement or threatened (in word or deed) to do so by "interfer[ing] with" his right to resume custody in time for school.[2] Grise, for her part, testified in support of her complaint to modify but was not cross-examined as to anything she had done (besides filing the court action) to impede the transfer of the children.

The trial judge, applying Virginia law,[3] found that Grise had not shown a change in circumstances sufficient to justify modification of the custody agreement. (Grise does not challenge that decision on appeal.) The judge therefore denied the request to modify but reminded the parties that "the Virginia Custody Order ... remains in effect and [Grise] must cooperate in permitting [Fritz] as sole custodian to move to his next assignment with the children." When Fritz's attorney orally requested attorney's fees, the judge responded, "I do not think that simply having won on the merits entitles him to have Ms. Grise incur those expenses[,] because I do not think her ... attempt to have the order modified was in any way frivolous." Fritz's counsel then brought up the fee provision of the Agreement, which caused the judge to order separate briefing of that issue although reiterating that "if it were not for this contract," attorney's fees would not be an issue. After briefing, the court denied the request for fees.

## II.

The attorney's fee provision of the Agreement provided:

In the event either party brings an action to enforce or implement the terms of this Agreement, and such action is successful, the legal fees and costs reasonably incurred by that party to enforce or implement the terms of this Agreement shall be determined by the court and awarded to the prevailing party.

Like this court, the Virginia courts interpret the language of such agreements according to contract principles. *See White v. White*, 257 Va. 139, 509 S.E.2d 323, 325 (1999); *see also King v. King*, 579 A.2d 659, 663 (D.C.1990). "[When] an agree-

---

1. The Agreement made elaborate provision for who would bear the costs of travel associated with custody and visitation.

2. Most of Fritz's testimony explained why he had agreed to relinquish custody to Grise from July 1997 to the present. As to the expected transfer of the children, Fritz's counsel told the court that "an appropriate resolution of this matter ... would be to allow Ms. Grise to go with the children on vacation to New Hampshire [as scheduled] as long as they were back and able to travel on August the 10th."

3. The parties were in accord-and agree on appeal-that the Agreement made Virginia law applicable to any disputes thereunder.

ment is complete on its face, and is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Berry v. Klinger,* 225 Va. 201, 300 S.E.2d 792, 796 (1983) (quoting *Globe Iron Constr. Co. v. First Nat'l Bank of Boston,* 205 Va. 841, 140 S.E.2d 629, 633 (1965)).

■ By its terms, the Agreement authorizes a fee-shift in fewer circumstances than it might have. It could have provided for an award of fees to a party successfully bringing *or defending* an action to enforce the Agreement or—as here—to modify the Agreement. But it did not. Fritz nonetheless argues that by defeating the complaint to modify, he prevailed on his counterclaim brought to enforce or implement the Agreement[4]—he "won on the merits," in the trial judge's words. That argument mischaracterizes the outcome of the proceeding. In reaction to Grise's complaint Fritz did two things: he filed an opposition explaining why, under applicable law, Grise had not shown grounds for a modification, and he filed a counterclaim alleging broadly that she had sought to interfere with his custodial rights. At the hearing, as explained, he presented evidence and arguments that were persuasive on the former, but offered no evidence that Grise had engaged in any "interference" other than filing a motion to modify the Agreement, which filing the judge found to have been in good faith. Accordingly, the relief the judge ordered was no different than if Fritz had (successfully) defended against modification but filed no counterclaim. The fact that the judge reminded Grise of her obligations under the Agreement was not a finding—which would have lacked evidentiary support—that she was in viola-

tion of them. By mutual consent Grise had, and would continue to have, custody of the children until she relinquished it in time for them to begin school in Jakarta. No evidence suggested, nor did the judge find, that she was in "anticipatory" breach of that duty to surrender custody.

The trial judge, in short, correctly recognized that letting Fritz's opposition to the complaint to modify do service for an action to enforce or implement would rewrite the parties' agreement as to fees. She was also correct in seeing that too great a readiness to view a good-faith motion to modify as "interference" with a custody order—requiring a motion from the other party to "enforce" it—would chill the exercise of a well-established right of the non-custodial parent. *See* Virginia Code § 20–108 (2000) (authority of court to modify custody order); *Rice v. Rice,* 415 A.2d 1378, 1383 (D.C.1980) (same).

■ Fritz additionally argues that, the Agreement aside, the trial court abused its discretion in denying him attorney's fees under the common law and the Uniform Child Custody Jurisdiction Act (UCCJA), D.C.Code § 16–4501 *et seq.* (2001) (repealed 2001). The common law argument rests on the inherent authority of the trial court "to order the payment of attorney's fees to the custodial parent in [an action for the custody of children] 'not as counsel fees *per se* to the [custodial parent], but as reimbursement to her for necessaries for the minor children.'" *Martin v. Tate,* 492 A.2d 270, 273 (D.C. 1985) (quoting *Paine v. Paine,* 267 A.2d 356, 357 (D.C.1970)). In such circumstances a fee award may be deemed in the

---

4. "To 'bring' an action has a settled customary meaning at law, and refers to the initiation of legal proceedings in a suit." Black's Law Dictionary 174 (5th ed.1979). Although Fritz's counterclaim did not "initiate" the le-

gal proceedings in this case, we will assume that he "br[ought] an action to enforce or implement" the Agreement, particularly since Grise's complaint sought modification rather than enforcement of it.

best interests of the children. *Id.* Our cases have not discussed this authority in the context of a custody agreement by the parties expressly governing attorney's fees—in which the parties themselves, at least presumptively, have decided the circumstances in which a shift in responsibility for fees best serves the children's interest. But assuming, without further consideration of the point, that the trial court may override a contractual fee provision when the interests of a child dictate, the exercise of such authority would be committed to the court's discretion, *see Martin*, 492 A.2d at 274, and the judge here expressly declined to shift fees in the circumstances presented unless the Agreement required her to do so. *See* Tr. of July 30, 1999 at 41 ("I think legal fees were well merited on both sides and each side should incur their own expenses."). Since Fritz made no showing that his ability to care for the children was impaired by the cost of defending against Grise's complaint, there was no abuse of discretion.

The argument for fees under the UCCJA fares no better. At the times relevant here, the fee provision of that statute provided for the discretionary award of "necessary expenses ... including attorney's fees" to a person entitled to custody and who is compelled by another's "violat[ion of] a custody decree of another state" to "enforce the decree in the District." D.C.Code § 16–4515(d) (2001); *see Bliss v. Bliss*, 733 A.2d 954, 961 (D.C.1999) (an award of fees under § 16–4515(d) "is

within the trial court's discretion").[5] Fritz cites our recognition in *Bliss* that " § 16–4515(d) does not require an explicit finding by the trial court that a party [here Grise] has violated an out-of-state custody order before it can award attorney's fees and expenses." *Id.* at 960. But we went on to stress that the court "should not automatically award attorney's fees ... to the custodial party" when the other party "makes a legitimate argument in good faith contesting the enforceability in our courts of [another jurisdiction's] custody order," *id.* at 962—or, as in this case, seeking in good faith to modify the order. And we held that "[i]mplicit in the trial court's decision [to award fees was] ... the determination that Mr. Bliss [had] not ma[d]e a good faith due process challenge to the ... custody order." *Id.* In denying Fritz's request for fees, therefore, the trial judge was well within her discretion in considering the legitimacy of Grise's complaint—which was "in [no] way frivolous"—to modify the Agreement.

*Affirmed.*

---

5. Fritz points out that, as of April 27, 2001, the UCCJA now provides that the court *"shall* award the prevailing party ... necessary and reasonable expenses ... including ... attorney's fees ... unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate" (emphasis added). *See* Uniform Child Custody Jurisdiction and Enforcement Act of 2000,

D.C. Act 13–600 § 2, subch. III, 48 D.C.Reg. 2214, 2230 (2001) (now D.C. Law 13–293, 48 D.C.Reg. 4074) (to be codified at D.C.Code § 16–4603.12(a)). As this amendment was not in effect at the time of the trial court's fee ruling, we have no occasion to interpret it here-including the meaning of "necessary" expenses.